By the Court.
Duer, J.
It may be admitted that the necessary effect of the trust, which this will creates in relation to the rents and profits, was to suspend, during its continuance, the absolute power of alienation, but as the trust was to last no longer than until the youngest child of the testator should attain the age of twenty-one years, the suspense, which it involved, was far within the limits which the statute allows. A devise to trustees to receive and apply the rents and profits, during a minority, is not an absolute term of years, corresponding with the possible duration of the minority- but is determined by. the death of the minor before he- attains his age. This construction of such a limitation was adopted both by the chancellor, and the court of errors, in Hawley v. James (5 Paige, 463; 16 Wend. 60), and although i,t is not easy to be reconciled with the English decisions (Boraston’s case, 3 Rep. 19; Taylor v. Biddell, 2 Mod. 289; Stanley v. Stanley, 16 Vesey, 491), it must now be considered as the settled law of the state. Hence, when the trust is to continue during more than two minorities, the limitation is void, since the suspense' of alienation, which it creates, may exceed two of the lives upon which the trust depends ; but when limited to a single minority, it is plainly valid, since the suspense cannot possibly exceed the life of the minor, and by his attaining his age, may be determined at a much earlier period than his actual death. In contemplation of law, the suspense is fora shorter period than the continuance of a single life in being at the creation of the estate (1 Rev. Stat. § 15, p. 723). In the case before us, but one of the children of the testator was under age, at the time of the death of the testator ; and it seems to us that there is no exception from the rule which the Revised Statutes expressly declare, namely, that where an estate is created by devise, the death of the testator shall be deemed the time of its creation (1 R. S. § 41, p. 726). By thus referring to the statute, we are not to be understood as inti *370 mating that such is not also the rule of the common law. It must be admitted that the language of some of the more recent text-writers (Ram on Wills, 6 ; Lewin oh Perpetuities, 170,442) seems to favor the position that an estate by devise is created by the publication of the will, but whether these writers are sustained by the cases to which they refer, is a different question, which we deem it unnecessary now to examine.
To the proposition, that in computing the period of suspense, the lives of the two annuitants are to be added to that of the minor, we cannot assent. The testator plainly intended that the estate of the trustees should cease, when his youngest child should attain his age, since he authorizes them, at that time, to sell the whole of his real estate, with the exception of the house and lot devised to his wife, and divide the proceeds among the children, reserving, however, a sufficient capital for the payment of the annuities. Supposing, therefore, the directions of the will to be followed, there could be no suspense of the power of alienation beyond the term of minority, except as to the capital set apart for the payment of the annuities ; and as it was the duty of the executors to set apart a distinct capital for each annuity, the suspense in each case, if it existed at all, was only during a single life, in addition to the term of minority. As the premises now in controversy could not have formed a part of the capital reserved for the annuities, they were freed from any suspense of the power of alienation, directly upon the expiration of the trust term. As soon as the youngest child attained his age, there were persons in being by whom an absolute fee in possession might have been conveyed.
We observe further, that the argument as to the effect of the annuities in suspending alienation, was founded upon an erroneous construction of those provisions, -which bear upon the question, in the article of “ uses and trusts.” It assumed that the direction to pay an annuity, which is charged upon lands, or the rents and profits of lands, creates an express trust under the third subdivision of sec. 55, and is therefore subject to the prohibitory clauses in sec. 60 and 63 ; but we are clearly of opinion, that this subdivision extends only to the cases in which the whole rents and profits, whatever may be their amount, are to-be paid over, or otherwise applied to the use of, the benefi *371 ciary, and not to those in which the sum to be raised and paid over, whether immediately or annually, is ascertained and defined. An annuity, given by a will, whatever may be the direction as to the mode of its payment, is a pecuniary legacy, and hence, when it is charged upon lands, it is only under the second subdivision of sec. 55 that a trust for its payment can be sustained. This question was very fully debated and considered in Hawley v. James, and it is manifest, from the terms of the decree, that the construction we have stated is that which the court of errors finally adopted (16 Wend. p.—).• The annuities, which in that case were sustained, by the express terms of the will, were to be paid by the trustees out of the rents and profits of the lands devised, and had they not been regarded as legacies, assignable in their nature, and therefore imposing no restraint upon the alienation of the lands, the court, instead of decreeing them to be paid, must have declared them to be void. That such must have been the result of a different construction was admitted by nearly all the judges and senators who delivered opinions. We therefore consider the law as settled, that the bequest of an annuity, to be paid by trustees, does not suspend the alienation of the lands upon which it is charged, even during the lifetime of the annuitant, since, by releasing to the persons entitled in remainder or reversion, he may extinguish the trust, or may unite with them and the trustees in conveying an absolute fee to a third person.
The direction, or, more correctly, the permission given to the executors to accumulate the surplus rents and profits during the trust, as the accumulation was for the benefit of adults, as well as of minors, it may be admitted, is void ; but we cannot admit that by this illegality the other provisions of the will are at all affected. The only consequence is, that the children were entitled to the whole income, not merely to such a proportion as the executors might have deemed sufficient for their maintenance and support. The doctrine that an express trust, with all its powers and incidents, is rendered void, by the invalidity of any one of several distinct and independent purposes, for which it is created, we rejoice to say, may now be considered as decisively and completely overruled. (Hone’s Executors v. Von Schaick, 20 Wend. § 564; Darling v. Rogers, 22 Wendall, 483; Irving v. *372 De Kay, 9 Paige 521, 8.) Root v. Stuyvesant is an anomalous case, to be rejected and shunned, not to be followed; as an authority, it ought never to be quoted.
We are not certain that we rightly apprehend the meaning, or intended application, of the last objection to the validity of the defendant’s title, namely, that the power of sale vested in the executors was void, because it is given for the same purpose, for which an express trust is authorized, by the statute. The objection, it is probable, was suggested by some of the observations of Mr. Justice Bronson, in Hawley v. James, but those observations, as we understand them, only .mean that where an express trust, otherwise valid, is held to be void, as involving a perpetuity, it cannot be sustained as a power in trust under section 58 in the article of “ Uses and Trusts and we certainly agree with the learned judge, that, to such a case, the terms of that section do not at all apply. But if we have rightly construed, the provisions of the will, the case before us is not the case to which the observations of Mr. Justice Bronson above refer ; and hence the objection we are considering, so far as it rests upon those observations, has manifestly no application. Had we been constrained to adopt that construction of the will upon which the learned counsel for the plaintiff insisted, namely, that the express trust which the will creates embraced all the estate of the testator, was intended to last during the lives of the two annuitants, as well as during the minority of his youngest child, and during that period' rendered the whole property inalienable, we should probably not have hesitated to say that the power of sale given to the executors was annexed to and must fall with their estate ; but holding, as we do, that the trust term, as created by the will, involved no undue suspense of the power of alienation, and was therefore valid, we are unable to see that there are any grounds upon which the validity of a power of sale to be exercised, at the expiration of the term, or the legality of its exercise, by the surviving executor, can reasonably be questioned. .
It is probable, however, that the objection that the power to-sell was void, as given for the same purpose for which an express trust may be created, was meant to be understood, in a different sense, from that which we have supposed. The meaning may be *373 that a power in trust can never be created for any purpose that may be effected by an express trust; that is, that a power to sell lands for the benefit of creditors or legatees, or for satisfying a charge, is absolutely void, unless the trustee is clothed with an estate, as well as an authority. It would be a sufficient reply to the objection thus stated, that the power to sell, as created by this will, is not given for any purpose which the statute enumerates. The proceeds of the lands when sold, are to be divided amongst those to whom the lands themselves are devised, and their distributive shares are not legacies, but belong to them as owners. It is for the benefit of devisees, not of legatees, that the sale is directed (Patten v. Randall, 1 Jac. & Walk. 189; Bentham v. Wilshire, 4 Mad. 44; Dominick v. Michael, 4 Sand. S. C. R. p. 374.)
The sole object of the power is to facilitate an equal division of the property-which it embraces; and to secure the proper execution of such a power, it is not at all necessary that any estate should be given to the trustee in the lands to be sold. This is no more necessary, where the power is created by a will, than where it is given by a court of justice to commissioners, in a suit for partition ; as it is essentially a power to make partition, it is only as power in trust that it could be granted or exercised.
But we must not limit ourselves to a reply that while it proves the objection to be irrelevant, seems to admit that, if relevant, it would be valid. No such admission is intended to be made, or can justly be made. The position that a power in trust cannot be granted for any purpose for which an express trust is authorized, we are convinced, is groundless, as well as novel. When a trust is created for the payment of legacies, or the satisfaction of a charge, by a sale or mortgage, it rests entirely in the discretion of the testator. whether he will confer an estate, or a mere authority. That he possessed this discretion, at common law, it is impossible to doubt, nor have we discovered a single word in the revised statutes from which the intent of the legislature, to take it away or abridge its exercise, can be inferred. On the contrary, as the article “ Of Powers,” has imposed no restriction whatever on the creation of powers in trust, it seems a necessary consequence that a trustee may be authorized to per *374 form any act “ in relation to lands or the creation of estates therein, or charges thereon, which the owner granting the power might himself lawfully perform” (1 R. S. p. 732, sec. 74).
We have said all, that the decision of this controversy requires to be said, but there are some further observations in relation to “ Trusts and Powers,” as modified by the revised statutes, which the points involved in this case have suggested, and which, for many reasons, we deem it expedient to add. It is frequently asserted, or intimated, and seems indeed to be generally thought, that the new statutory provisions have prescribed limits to the creation of trusts much narrower than the exigences of society demand, and which must therefore operate, in numerous cases, to deprive meritorious trusts of the security and protection to which, by law, they were formerly entitled ; yet this is so far from being true, that if the term trust be understood, in its general and appropriate sense, as applying to every case, in which a power of control or disposition is given to one person to be exercised for the benefit of another, and if the limitation is so framed as not to involve an undue suspense of alienation, it is certain, that a valid trust may now be created for any and every purpose, for which a trust might have been created, before the revised statutes were adopted. The attempt to define and limit active trusts by an enumeration of all the purposes for which they may be created, would be extravagant and futile; and' so conscious were the revisers of this, that in their notes to the chapter “ Of Real Property,” they expressly said that such trusts from their nature cannot be limited (3d R. S. 2d ed. p. 590). No such limitation therefore could have been intended by them as the effect of the regulations which they proposed.
It is not at all necessary, however, to the preservation of trusts, that a naked title should be vested in one person, when the actual possession, the reception of the rents and profits, and the entire power of disposition and control, are given to another. Nor, in many cases, is it requisite to give to the trustee any estate in the lands, to enable him to execute the powers, or fulfil the duties, which the trust confers or enjoins. Hence the revised statutes have wholly abolished passive trusts, and by *375 enumerating the purposes for which alone an express trust may be created, have limited the cases in which an estate may be given to the trustee, as well as an authority. The supposition, however, that by these changes the power of the owner in the disposition of his property is really abridged, or his intentions in favor of those who may be the object of his bounty, rendered liable to be defeated, is a serious error, which it is time should be banished from the minds of the profession, and be no longer implied in the opinions of judges. The trust, where lands are granted or devised in trust, is, in all cases, either nominal and passive, or real and active. Where it is passive, as where lands are granted or devised to A. to the use of B., or in trust to permit B. to take the possession and receive the rents and profits, although the trust is wholly void, yet by force of sec. 49, in the article of “Uses and Trusts” (1 R. S. p. 722), the intent of the person creating it is fully executed, by giving to the beneficiary a legal estate, of the same quality and duration, as his beneficial interest. When the trust, although not created for a purpose enumerated in the definition of express trusts, is real and active, as where the trustee is empowered to convey the lands upon certain conditions to certain persons, the grant or devise, as passing an estate, is indeed void, but the trust in its substance and reality is fully preserved, and its execution may be enforced, by the same means and with the same certainty} as had a title to the lands been vested in the trustee, as well as a power of disposition. The statute then executes the intention of the grantor or testator, by declaring the trust to be valid, as a power in trust (sec. 58, p. 723), and by this construction the powers and duties of the trustee, and the right and remedies of the cestui que trust, are precisely the same as they would have been had the revised statutes never been passed. The conclusion is, that neither the power of the owner of lands in the creation of trusts, nor the jurisdiction of equity in compelling their execution, although somewhat changed in form, have been in reality abridged ; and it is therefore an unnecessary alarm that the statutory provisions are said to have excited. It is true where a trust, whether an express trust or merely a power, is so framed as to suspend alienation for a longer period than the statute allows, the entire limitation, as in Coster v. *376 Lorillard, and in Hawley v. James, is justly held to be illegal and void, but we state, with entire confidence, that the invalidity of an express trust upon the sole ground that it cannot be referred to any class of those which the statute has alone authorized, can never operate to deprive the objects of the trust of the benefits intended.
In conformity with the views we have expressed, judgment must be entered for the defendant. ' •