JOHN TOWNSHEND, Appellant, *v.* EDWARD FROMMER et al.,
Respondents.

C., a married woman, conveyed certain real estate to a trustee, in trust, to
pay over the yearly income to herself during life, free from all claim of her
husband, and upon the further trust that at her death the trustee shall
"convey the said lands and every part of them in fee simple" to her
children "living at her decease and the surviving children of such of
them as may then be dead." At the time of this transfer there was a
mortgage upon the lands which was subsequently foreclosed, C. and her
husband and the trustee being made parties defendant, but certain chil-
dren of C., who were then living, were not joined as such. The land was
sold and the purchaser went into possession. In an action of ejectment
in which plaintiff claimed under a conveyance from the children and
grandchildren, *held*, that the trust for the life of the grantor was valid as
an express trust (1 R. S. 728, § 55, subd. 3), and under this part of the
conveyance the trustee was vested with the whole legal and equitable
estate, subject only to the execution of the trust, and every estate and
interest not embraced in the trust and not otherwise disposed of remained
in and reverted to the grantor (1 R. S. 729, §§ 60, 62), who had power
to declare to whom the lands should belong on the termination of the
trust (§ 61); that the further trust to convey was an express trust, but
as it is not one permitted by the statute, it was void as such, but was
valid as a power in trust (§ 58); that it conferred no interest in the estate
during the grantor's life upon any member of the class of intended bene-
ficiaries; and so, that they were not necessary parties to the foreclosure
suit; that the extinguishment of the estate in the grantor and trustee by
the foreclosure sale, destroyed it as to the beneficiaries of the power;
and so, that plaintiff acquired no interest under his deed.

*It seems* that a trust which is merely passive and does not direct or
authorize the performance of some act by the trustee, may not be vali-
dated as a power in trust. (1 R. S. 728, §§ 47–49.)

A trust, however, to convey upon the happening of some event, is active,
and so may be validated as a power, and this although the statute will
operate to execute the use in the intended beneficiaries, in case of failure
on the part of the trustee to execute the power; as both the statute and
the power are inoperative until the happening of the event specified.

*Bowen* v. *Chase* (94 U. S. 812); *Watkins* v. *Reynolds* (123 N. Y. 211); *Genet*
v. *Hunt* (113 id. 158); *Goebel* v. *Wolf* (Id. 405); *Miller* v. *Wright* (109 id.
194); *Stevenson* v. *Lesley* (70 id. 512); *Woodgate* v. *Fleet* (64 id. 566); *Bruner*
v. *Meigs* (Id. 506); *Adams* v. *Perry* (43 id. 487); *In re Livingston* (34 id.
555); *Gilman* v. *Reddington* (24 id. 9), distinguished.

(Argued December 16, 1890; decided February 24, 1891.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, entered upon an order made June 3, 1889, which overruled plaintiff's exceptions, denied a motion for a new trial and directed judgment in favor of defendants upon a verdict directed by the court, exceptions having been ordered to be heard at first instance at General Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*George F. Danforth* for appellant.　　Mrs. Curtis, being owner in fee, subject to the mortgage by Dimond to Wagstaff, had an absolute right to dispose of the property subject to that mortgage. (*Packer* v. *R. R. R. Co.*, 17 N. Y. 296.)　　The trust to receive the rents and profits of the lands and apply them to the use of Mrs. Curtis during her life was a valid express trust. (1 R. S. 728, § 55; *Nicoll* v. *Walworth*, 4 Den. 388; *Miller* v. *Wright*, 109 N. Y. 194; *Irving* v. *Campbell*, 18 N. Y. S. R. 975; *Moore* v. *Appleby*, 36 Hun, 368.) If the deed had stopped with the creation of this trust the result would have been: The legal estate was in the trustee for the life of Mrs. Curtis, and the reversion upon that life estate in Mrs. Curtis, the creator of the trust. (1 R. S. 729, §§ 12, 60, 62; *Briggs* v. *Davis*, 21 N. Y. 577; *Stevenson* v. *Lesley*, 70 id. 517.) The deed did not stop with the trust, but went on to exercise the right reserved to Mrs. Curtis to declare to whom the lands should belong at the termination of the trust, and to grant such lands subject to the execution of the trust. Under the law, prior to the Revised Statutes, this was a recognized trust, and its effect was to vest the legal estate in the trustee and gave the children direct equitable estates in the land under an express trust. (1 R. S. 729, § 61; *Lockman* v. *Reilly*, 95 N.Y. 70; *Williamson* v. *Field*, 2 Sandf. Ch. 586; *Bowen* v. *Chase*, 94 U. S. 812.) The direction to convey is not an express trust. (1 R. S. 728, §§ 45, 55; *Downing* v. *Marshall*, 23 N. Y. 366; *N. Y. D. D. Co.* v. *Stillman*, 30 id. 194.) The second so-called trust was formal only, and by force of the

statute it vested a legal estate in remainder in the children of Mrs. Curtis. (1 R. S. 728, 734, §§ 49, 98; *Stanley* v. *Stanley,* 16 Ves. 491; *Phipps* v. *Ackers,* 9 Cl. & Fin. 583; Hill on Trustees, 69; 2 Sugd. on Powers, 181; *Brown* v. *Pocock,* 6 Sim. 257; Perry on Trusts, § 252; *Downing* v. *Marshall,* 23 N. Y. 366; *Verdin* v. *Slocum,* 71 id. 347; *Watkins* v. *Reynolds,* 33 N. Y. R. S. 173.) No power in trust was created. (1 R. S. 729, §§ 58, 67; *Lang* v. *Ropke,* 5 Sandf. 363; *Hetzel* v. *Barber,* 6 Hun, 534; 69 N. Y. 1; *Prentice* v. *Jansen,* 79 id. 478.) It was claimed to be the intention of Mrs. Curtis that the children should take nothing until after her death, and that in the meantime they should have no power of anticipation. There is nothing from which such an intention can be inferred. (1 R. S. 748, § 2; *Coster* v. *Lorillard,* 14 Wend, 362; *Tillinghast* v. *Coggeshall,* 7 R. I. 383; *Price* v. *Sisson,* 1 N. J. Eq. 168; *W. F. Co.* v. *Sisson,* 17 id. 475; *Cushing* v. *Blake,* 30 id. 689; *Stanley* v. *Stanley,* 16 Ves. 491; *Phipps* v. *Ackers,* 9 Cl. & Fin. 583.) Under a trust, such as that under consideration, the direction to convey vests an estate in the *cestui que trust* without a conveyance. (*Miller* v. *Wright,* 109 N. Y. 194; *Genet* v. *Hunt,* 113 id. 158; *Woodgate* v. *Fleet,* 64 id. 566; *Gilman* v. *Reddington,* 24 id. 9; *O. N. Co.* v. *Windsor,* 20 Wall. 68; *Gibbs* v. *B. G. Co.,* 130 U. S. 409; *Ward* v. *Davis,* 3 Sandf. 502; *Bruner* v. *Meigs,* 64 N. Y. 506; *Manice* v. *Manice,* 43 id. 363; *Skinner* v. *Quin,* Id. 99; *Adams* v. *Perry,* 43 id. 487; *Stevenson* v. *Lesley,* 70 id. 512.) The trust deed created a vested remainder in the children of Mrs. Curtis. (1 R. S. 738, § 138; *Moore* v. *Littel,* 41 N. Y. 66; Gay on Perpetuities, § 107; *Foley* v. *Foley,* 17 Hun 235–239; *Williams* v. *Peabody,* 8 id. 272; *Powers* v. *Bergen,* 6 N. Y. 358–360; *Campbell* v. *Rawdon,* 18 id. 420; *Baker* v. *Lorillard,* 4 id. 257; *Van Axte* v. *Fisher,* 117 id. 402; *Powers* v. *Bergen,* 6 id. 360; *Williamson* v. *Field,* 2 Sandf. Ch. 586; *Smith* v. *Scholtz,* 68 id. 42–61; 2 Washb. on Real Prop. 227; *Embury* v. *Sheldon,* 68 N. Y. 236; *Kip* v. *Hirsch,* 103 id. 571.) After the creation of the trust and before the foreclosure, the title to the premises subject to the mortgage was

separated into an estate for life of Mrs. Curtis in the trustee and a vested remainder in fee in the children of Mrs. Curtis. Each of these estates was entirely independent of the other. (1 R. S. 722, 725, §§ 7, 35; *Smith* v. *Scholtz*, 68 N. Y. 61; *Moore* v. *Littel*, 41 id. 66; *Mosley* v. *Marshall*, 22 id. 202; *Cairs* v. *Chabert*, 3 Edw. Ch. 312; *Fleet* v. *Dorland*, 11 How. Pr. 289; *Peck* v. *Sherwood*, 56 N. Y. 615; *Woodward* v. *James*, 115 id. 346; *Roesch* v. *Waters*, 7 Law. Rep. 533; *Derains* v. *Derains*, 72 N. Y. 154–158; 1 Washb. on Real Prop. chap. 5. § 1.)   The two estates being separate and independent, the owners of neither could by any act or omission affect the other.   (*Jackson* v. *Schoonmaker*, 4 Johns 390; *Jackson* v. *Sillick*, 8 id. 262; 1 R. S. 735, 730, §§ 32, 65; *Goebel* v. *Iffl1*, 48 Hun 21; 111 N. Y. 170; *Wilson* v. *White*, 109 id. 59; *Howell* v. *Leavit*, 90 id. 238; *Miller* v. *Wright*, 109 id. 280; *Humphrey* v. *Chamberlain*, 11 id. 274.)   The children of Mrs. Curtis not being parties to the foreclosure suit, were not affected by it.   Their rights in the premises were not cut off.   As vested remaindermen they were owners of the equity of redemption, and this right could not be affected by a decree in a suit to which they were not parties. (*Landon* v. *Townshend*, 112 N. Y. 93; *Moore* v. *Appleby*, 108 id. 241; *Lockman* v. *Reilly*, 95 id. 64; *M. L. Ins. Co.* v. *Shipman*, 29 N. Y. S. R. 745; *U. S. T. Co.* v. *Roche*, 116 N. Y. 120; *Howell* v. *Leavitt*, 90 id. 238; *Fleming* v. *Burnham*, 100 id. 8; *Genet* v. *Hunt*, 113 id. 158; *Watson* v. *Bonney*, 2 Sandf. 405; *Packer* v. *R. R. R. Co.*, 17 N. Y. 283–300.)   The foreclosure was valid; it vested in the purchaser the estate for the life of Mrs. Curtis.   (*Packer* v. *R. R. R. Co.*, 17 N. Y. 288, 289.)   As the purchaser at the foreclosure sale acquired the right and was substituted to the place of the trustee and of Mrs. Curtis, he and those claiming under him were rightfully in possession during the life of Mrs. Curtis. But the purchaser held subject to the trust.   The possession having been rightfully acquired against the tenant for life. ·(*Williamson* v. *Field*, 2 Sandf. Ch. 572, 573; *Fleming* v. *Burnham*, 100 N. Y. 1–8; *Christie* v. *Gage*, 71 id. 192,

193.) One coming into an estate for life by purchase at sheriff's sale may not establish an adverse possession against the reversioner. (*Vandervoort* v. *Gould*, 36 N. Y. 639; *Bedell* v. *Shaw*, 59 id. 50; *Burhans* v. *Van Zandt*, 7 Barb. 91; 1 Washb. on Real Prop. chap. 5, § 1; *Jackson* v. *Johnson*, 5 Cow. 75.) Upon the death of Mrs. Curtis, the rights of those claiming under the foreclosure sale ceased, and by remaining in possession they became trespassers and liable to ejectment without any previous demand. (1 R. S. 730, § 67, 794, § 7; *Torrey* v. *Torrey*, 14 N. Y. 430; *Williams* v. *Caston*, 1 Strobh. 130.) The conveyances by the children of Mrs. Curtis to plaintiff, made in the life-time of Mrs. Curtis, were not within the statute prohibiting the conveyance of land held under title adverse to that of the grantor. At the time such deeds were executed the lands were held under a title subordinate to that of the grantors. (1 R. S. 739, § 147; *Crary* v. *Goodman*, 22 N. Y. 170.) The action is properly brought as ejectment. (*Howell* v. *Leavitt*, 95 N. Y. 617; *Wing* v. *Field*, 35 Hun, 617; *Lockwood* v. *McBride*, 21 J. & S. 268.) The mortgage debt has been paid and the lien of the mortgage removed. (2 R. S. 301, § 47; *Colgan* v. *Dunn*, 50 Hun, 444; *Kortright* v. *Cady*, 21 N. Y. 343; *Bush* v. *Prosser*, 11 id. 358; *Viele* v. *Gray*, 10 Abb. Pr. 5; *Butler* v. *Miller*, 1 N. Y. 497; 22 Abb. [N. C.] 268; *Newman* v. *Lorrimer*, 19 Ia. 244; *Hensdershott* v. *Ping*, 24 id. 134; *Wayman* v. *Cochran*, 35 Ill. 152; *Priest* v. *Wheelock*, 58 id. 114; *Harris* v. *Mills*, 28 id. 44; *Terry* v. *Munger*, 121 N. Y. 161; *Conrow* v. *Little*, 115 id. 387, 393.)

*John F. Dillon* for respondents. Plaintiff has no estate, legal or equitable, in the *locus in quo*. He cannot, therefore, maintain this action of ejectment, and the court's direction to find a verdict for the defendant was correct. (1 R. S. 728, §§ 45, 55, 58, 59, 60, 62, 73, 76, 78, 95, 106, 113, 121, 135; Sugden on Powers [8th ed.], chap. 9, §§ 3, 676; *Duke of Marlborough* v. *Lord Godolphin*, 2 Ves. Sr. 61; 4 Kent's Comm. [13th ed.] 316; *Bergen* v. *Bennett*, 1 Caine's Cas. 15,

16; *Jackson* v. *Schauber*, 7 Cow. 187; *Follett* v. *Tyrer*, 14 Sim. 125; *Coster* v. *Lorillard*, 14 Wend. 266, 297; 3 R. S. [7th ed.] 2205, § 2; *Kennedy* v. *Kingston*, 2 J. & W. 431; *Bielefield* v. *Record*, 2 Sim. 354; *Swift* v. *Swift*, 8 id. 168; *Thomas* v. *Thomas*, 14 id. 234; Humphreys on Real Prop. 17, 18; *Anderson* v. *Mather*, 44 N. Y. 249; *Platt* v. *U. P. R. Co.*, 99 U. S. 58, 59; *Jackson* v. *Jansen*, 6 Johns. 73; *Sharpsteen* v. *Tillon*, 3 Cow. 651; 1 Perry on Trusts, § 305; 1 Lewin on Trusts [8th ed.], 209, 210; *Doe* v. *Scott*, 4 Bing. 505; *Wood* v. *Burnham*, 6 Paige, 514; *Tallman* v. *Wood*, 26 Wend. 9; *Edmondson* v. *Dyson*, 2 Kelly, 307; *Wiley* v. *Smith*, 3 Kelly, 551; *Loving* v. *Hunter*, 8 Yerger, 4; *Porter* v. *Doby*, 2 Rich. 49; 1 White & Tudor's L. C. Eq. 42; *West* v. *Holmesdale*, L. R. [4 H. L.] 543, 565; *Downing* v. *Marshall*, 23 N. Y. 365; *Clark* v. *Crego*, 47 Barb. 599; *D. D. Co.* v. *Stillman*, 30 N. Y. 174; *Gilman* v. *Reddington*, 24 id. 9; *Manice* v. *Manice*, 43 id. 364; *Crittendon* v. *Fairchild*, 41 id. 289; *Kinnier* v. *Rogers*, 42 id. 531; *Skinner* v. *Quin*, 43 id. 99; *Hetzell* v. *Barber*, 69 id. 1; *Ludlow* v. *Van Ness*, 8 Bosw. 178; *Cooke* v. *Platt*, 98 N. Y. 35.) The foreclosure vested the whole estate for life and in reversion in the purchaser. That estate is now in the defendants, and ejectment will not lie. (2 Jones on Mort. § 1394.) The children of Mrs. Curtis were not necessary parties to the foreclosure proceedings. (2 Jones on Mort. § 1401; *Nodine* v. *Greenfield*, 7 Paige, 544, 548; *U. S. T. Co.* v. *Roche*, 116 N. Y. 120.) The Statute of Limitations is a bar to this action of ejectment. (*Bennett* v. *Garlock*, 79 N. Y. 302.) Defendants are mortgagees rightfully in actual possession, and, therefore, ejectment will not lie against them. (1 Sugden on Powers, 223; *Mann* v. *Earle*, 4 Gray, 299; 3 R. S. [1st ed.] chap. 1, art. 6; 2 Jones on Mort. § 1395; Freeman on Judicial Sales, § 52; *Probst* v. *Brock*, 10 Wall. 519, 534; *Jackson* v. *Minkler*, 10 Johns. 480; *Jackson* v. *Bowen*, 7 Cow. 13; *Vanderkemp* v. *Shelton*, 11 Paige, 28; *Vroom* v. *Ditmas*, 4 id. 526; *Gage* v. *Brewster*, 31 N. Y. 218; *Von Dyne* v. *Thayre*, 14 Wend. 233; *Phyfe* v. *Riley*,

15 id. 248 ; *Brainard* v. *Cooper*, 10 N. Y. 356 ; *Robinson* v. *Ryan*, 25 id. 320 ; *Pell* v. *Ulmar*, 18 id. 139 ; *Miner* v. *Beekman*, 50 id. 337 ; *Chase* v. *Peck*, 21 id. 581; *Hubbell* v. *Moulson*, 53 id. 225 ; *Wing* v. *Field*, 109 id. 654 ; *M. A. B. Church* v. *O. S. B. Church*, 73 id. 82, 94 ; *Howell* v. *Leavitt*, 95 id. 617 ; *Hoffman* v. *Harrington*, 33 Mich. 392 ; *Starkie* v. *Brown*, 12 Wis. 572 ; *Hennessy* v. *Farrell*, 20 id. 42 ; *Gillett* v. *Eaton*, 6 id. 30 ; *Tallman* v. *Ely*, Id. 244 ; *Johnson* v. *Sandhoff*, 30 Minn. 197 ; *Martin* v. *Fridley*, 23 id. 13 ; *Porter* v. *Kilgore*, 32 Ia. 379 ; *Anson* v. *Anson*, 20 id. 55 ; *Kilgour* v. *Wood*, 64 Ill. 345 ; *Brown* v. *Smith*, 116 Mass. 108 ; *Clark* v. *Wilson*, 56 Miss. 753 ; *Johnson* v. *Robertson*, 34 Md. 165, 175 ; *Stoney* v. *Shultz*, 1 Hill Ch. 465, 499 ; *Connor* v. *Whitmore*, 52 Me. 185 ; *K. C. Co.* v. *K. & O. C. Co.*, 7 Blatchf. 391, 414 ; *Frische* v. *Kramer*, 16 Ohio, 125 ; *Jackson* v. *Slater*, 5 Wend. 295 ; *Davis* v. *Maynard*, 9 Mass. 242. Plaintiff cannot recover, because his deeds are void under the statutes, on the ground that the lands were at the time held adversely. (1 R. S. 690, § 147 ; Code Civ. Pro. § 1501 ; Penal Code, § 130.)

GRAY, J. This is an action of ejectment and through it the plaintiff seeks to establish his right to the possession of certain real estate in a block of land in New York city, which is bounded by the Fourth and Fifth avenues and Seventy-sixth and Seventy-seventh streets. The question of his right turns upon the sufficiency of certain proceedings for the foreclosure of a mortgage to bar his grantors of any right in the premises. The defendants claim title through conveyances upon a sale pursuant to the decree in said foreclosure proceedings ; while the plaintiff claims that his grantors had a vested interest in the premises covered by the mortgage, which was never cut off by the mortgagee's proceedings and remained theirs to dispose of. The material facts can be briefly stated. In 1835, William Wagstaff, being the owner of land, of which that now in question formed a part, conveyed to Dimond and received back a purchase-money mortgage for $10,000. Dimond then

conveyed to Curtis, and on September 28, 1835, Curtis conveyed the land to Stillwell, who on the same day reconveyed it to Clarissa E. Curtis, wife of his grantor. All these conveyances were made subject to the above mortgage, and its payment was assumed by the several grantees. May 1, 1837, Mrs. Curtis, her husband uniting with her, conveyed property, which included the premises, to Eliza Racey, upon certain trusts which I give from the record.

" But in trust, nevertheless, that the said party of the second part and her heirs shall receive the yearly income, rents, profits and produce of the said lands and premises and apply the same yearly, during the natural life of the said Clarissa, to the use of the said Clarissa, free, clear, exempt and discharged from all claim, demand, right, control or influence of her husband, the said James L. Curtis, or any husband that she may at any time have, and not to be in anywise subject to his debts, or any lien or charge created by him or anyone claiming by, from or under him, but to the sole and separate use of the said Clarissa.

" And on the further trust that the said party of the second part and her heirs shall, at the decease of the said Clarissa, convey the said lands and every part of them in fee simple to the children of the said Clarissa, living at her decease, and the surviving children of such of them as may then be dead, in equal portions, *per stirpes*, and not *per capita*, that is to say, etc."  *  *  *

Meanwhile, the mortgage affecting the premises had become the property of George Lovett, who, in September, 1837, commenced foreclosure proceedings. He joined Mr. and Mrs. Curtis, the grantors, and Eliza Racey, the trustee named in the trust conveyance, as parties defendant; but he did not join as such certain children of Mrs. Curtis then living. In 1840 a decree of foreclosure and sale was had. The plaintiff in foreclosure purchased a part of the premises at the sale, and subsequently acquired the remainder from another purchaser. By mesne conveyances the interest of Lovett in the land in question became vested in a Mrs. St. John, in 1858, and she, and

those claiming through her, have had an uninterrupted use and an actual possession since that year.

In November, 1885, the plaintiff purchased and took bargain and sale deeds, without covenants, from children and grandchildren of Mrs. Curtis, of four undivided tenth parts of the land. In the subsequent year Mrs. Curtis died, and then the plaintiff commenced his action.

It is quite evident that whether the proceedings leading to foreclosure and to a sale of the mortgaged property were efficacious to confer a clear title upon the purchaser, as against plaintiff's grantors, is a question to be determined by the legal construction and effect, which should be given to Mrs. Curtis' trust deed to Mrs. Racey. If the effect of that deed was to vest a legal estate in remainder, from the time of its delivery, in the children of Mrs. Curtis, then they were necessary parties to the foreclosure proceedings, in order to cut off their rights and the equity of redemption. And this is what the appellant claims to have been the legal effect of that instrument. But if the effect of the trust deed was to vest the whole of the legal and equitable estate in the trustee, subject to the execution of the trust in favor of the grantor, and the reversion remained in the grantor and her heirs, until after the termination of the trust estate and subject only to the execution of the power in trust, then all other interests were suspended meanwhile, and were, of necessity, contingent; and Mrs. Curtis' children, living at the time, acquired no estate in the lands requiring them to be joined as defendants in order to bar their rights and the rights of others in the class. And this is, substantially, the main position taken by the defendants.

When the property was conveyed to Mrs. Curtis, through Stillwell, she became its absolute owner in fee, but subject to the lien of the mortgage referred to. Her power of disposition over it was absolute, and, in its conveyance by the deed to Mrs. Racey, she exercised that power of disposition in the creation of two trusts. The first trust was to receive the rents and profits of the lands, and to apply the same to her (the

grantor's) use during her life, and it was valid as an express trust under the Revised Statutes (1 R. S. 728, § 55, sub. 3). Under that conveyance the grantee, as trustee, was vested with the whole legal and equitable estate, subject only to the execution of the trust imposed, and every estate and interest, not embraced in the trust and not otherwise disposed of, by force of the statute, remained in and reverted to the grantor, or creator of the trust, and her heirs, as a legal estate. (1 R. S. 729, §§ 60, 62.) By the 61st section of the statute it is declared that the effect of the 60th section, which vests the whole legal and equitable estate in the trustee, shall not be to prevent the creator of a trust from declaring to whom the lands, to which the trust relates, shall belong upon the termination of the trust. This provision, so obviously negative in its character, was, undoubtedly, intended to prevent a construction of the previous, or 60th, section, by which the grantor might be deemed incapacitated from making a disposition of the lands affected by the trust upon its termination. The section created no new power of disposition, but recognized the existence of a right, which had not been affected by the declaration of the quality of the estate which the trustee of a valid express trust would take. Therefore, Mrs. Curtis, after creating a valid express trust for her life, in proceeding, in the deed, to direct a further disposition of her lands, upon the termination of the trust by her own decease, was exercising the legal right, which inhered and remained in her, to dispose in a certain way of the legal estate then remaining. (§ 62.) Had she gone no further than to create the trust for her life, then, unquestionably, the reversion as a legal estate would have remained in her and her heirs. That is clear from the statute. But where the difficulty of this case is deemed to arise is in what the creator of the trust directed to be done as to this legal estate, which was hers to dispose of after the termination of the trust. Did she invest other persons with any right to it, or did she continue to retain and to represent every interest, in herself or her heirs, which her trustee did not have? She directed the

grantee to hold the lands " on the further trust," after her decease, to convey them in fee simple to her children " living at her decease and the surviving children of such of them as may then be dead." This was not one of the express trusts permitted by the fifty-fifth section of the statutes of uses and trusts. That this was an express trust, which, for not being comprended within those authorized by the statute, might be recognized as a power in trust, under its 58th section, the appellant questions. He insists that it was only a formal trust, which, by force of the statute, would be converted at once into a legal estate in remainder in its intended beneficiaries; to wit, in the children of Mrs. Curtis. He says that the trust was of a passive character; because conferring no control over the property, and that it was executed by the statute. (1 R. S. 728, §§ 47–49.)

Prior to the Revised Statutes and at common law, a trust to convey was certainly recognized as a special or active trust. Mr. Perry, in his work on Trusts (vol. 1, p. 305), speaking of instances at common law of how the legal estate may be prevented from vesting in the *cestui que trust* by the operation of the statute of 27 Henry VIII, mentions those where there may " any agency, duty or power be imposed on the trustee, as by a limitation * * * to pay the rents or to convey the estate," etc. * * * (And see Lewin on Trusts, 210, and the English cases cited in note.) With the enactment of the article in our Revised Statutes upon uses and trusts, all such were abolished, except those which that article specified and authorized; but by the 58th section of the article, it was provided that " where an express trust shall be created for any purpose not enumerated * * *. no estate shall vest in the trustee; but the trust, if directing or authorizing the performance of any act, which may be lawfully performed under a power, shall be valid as a power in trust," etc. A power, under the statute, is where authority is given to do some act in relation to lands or the creation of estates therein, which the owner might lawfully perform; and where a disposition is limited to be made to any person, or class of per-

sons, other than the grantee of the power, it is denominated as a special power in trust.   (§§ 74, 95.)

Our statute of uses had been modeled after the English statute (27 Henry VIII, ch. 10), and its purpose was to simplify and strengthen titles in lands, by abolishing distinctions between the mere title and the use, and in converting the beneficiary's interest into a legal estate.   Under that system, however, trusts could be created and the legal estate still be separated from the use, whenever the duties of the trustee were active; that is, when they called upon him for the performance of some act about the estate.   The revision, in 1830, of the statute was intended still further to prevent complications, which arose in the separation of the legal and equitable estates, through construing and enforcing a use as a trust; and, to that end, abolished all except the active express trusts enumerated; permitting all other express trusts to be executed as powers in trust.   (See Reviser's notes to sections 45 and 55; *Lang* v. *Ropke*, 5 Sandf. 363; *Downing* v. *Marshall*, 23 N. Y. 366.)

Obviously, a limitation upon the validation as a trust power of a trust, not comprehended within those authorized, is imposed in the respect that it must be one of those trusts which, at common law, would be deemed special or active trusts, as distinguished from nominal or passive trusts.   The operation of sections 47 and 49, and 50 and 58, of our statute of uses and trusts, read in connection, must be to prevent trusts from having any effect, when only passive, and not directing or authorizing the performance of some act about the lands.   An express trust, as a term descriptive either of the mode of its creation or of the legal title, could be created formerly whenever a special power, or duty, relating to the disposition of lands was imposed, and our Revised Statutes, while abolishing all express trusts, except those particularly enumerated, still permitted effect to be given to the intentions of a grantor, by declaring that when others were attempted they should be effectuated through the medium of a power in trust.

The object sought in the revision of the statute, as the revisers have stated in their notes, was to limit the creation of express trusts to those cases where the purposes of the trust seemed to require that the legal estate should pass to the trustee, and to give legal effect to a purpose, where such a necessity did not exist, by permitting its execution as a power in trust, if contemplating the performance of some act. (And see Judge COMSTOCK's opinion in *Downing* v. *Marshall, supra.*)

When the appellant's counsel insists upon the objection that a trust to convey is but a formal or passive trust, which cannot be validated as a power in trust, he reasons that the conveyance by the trustee is unnecessary for the vesting of the estate. If, in order to decide whether a trust, not authorized by the statute, shall be classified among those express trusts which may be effectuated as powers in trust, we are to determine its substance or activity by the obligatory nature of the duty to be performed, then the difficulty might, indeed, be deemed a serious one. If an express trust is not active unless it imposes a duty, which not only may, but must, be performed to affect, or effect, an estate, then the trust to convey here might be fairly said not to rank as a power in trust. But I think that would be fallacious reasoning; inasmuch as the test of activity is not in the importance, or in the obligatory nature of the duty to be performed by the trustee, but consists in what the trust empowers and demands of him. If it is something which the grantor could do, and, in order to carry out, would require action on his part, then the trust created is an active trust; notwithstanding that, by reason of the statute, the act or duty may be one which, when directed to be performed by a trustee, the statute might execute when the time for performance arrived. It is not that the statute declares a conveyance by a trustee to be unnecessary; it is that by construction of the statute a conveyance is deemed to be unnecessary.

It is the power to do something about the lands; that is, to dispose of them by a conveyance, that qualifies the trust as active. A trust to convey, naturally, involves a power of disposition, and such a duty is active, as compared with a trust which is

passive, as in the cases cited in illustration in the books, where
lands are granted or devised to A. to the use of B., or in trust
to permit B. to take the possession and receive the rents and
profits. In such a case, at common law and under the Revised
Statutes (§ 47, Uses and Trusts), the trust would be avoided
and the intent practically executed by giving to the beneficiary
a legal estate, commensurate in quality and duration with
the beneficial interest designed. (*Lang* v. *Ropke*, 5 Sandf.
[Sup. Ct.] 363, 375.)    In the case cited, Judge Duer sustained
as a power in trust a testamentary direction to sell and convey,
for purposes of division of the estate, upon the youngest child
attaining the age of twenty-one years. In his opinion, he says
that where a trust is real and active, as where the trustee is
empowered to convey the lands upon certain conditions to
certain persons, the statute declares the trust valid as a power
in trust.

Trusts to appraise and divide shares, or to sell, or to convey,
have been held valid as powers in trust, under the 58th section
of the Statute of Uses and Trusts, in the following cases of
*Gilman* v. *Reddington* (24 N. Y. 9–15); *Crittenden* v. *Fair-
child* (41 id. 289–291); *Manice* v. *Manice* (43 id. 303–364),
and *Clark* v. *Crego* (47 Barb. 599; affd. 51 N. Y. 646); the
latter of which may be deemed to be very much in point.

I think we are quite warranted in holding that the further
trust in this deed to convey after the grantor's death was valid
as a power in trust, and the question then is, what effect, if
any, did its creation have upon the estate of the grantor. Did
it confer any interest in the estate during the continuance of
the grantor's life upon any members of the class of intended
beneficiaries?

In *Bowen* v. *Chase* (94 U. S. 812), cited for the appellant,
the language of the opinion, to the effect that a direction to
convey does not derogate from the vesting quality of equitable
interests, has reference to the deed of appointment, executed
under the power reserved to the grantor in her deed of trust.
Madam Jumel had deeded her estate to a trustee, upon the
trust to pay over the rents to herself for her life, and upon

the further trust to convey upon her death to her heirs, with a reserved power to appoint the persons to whom the trustees should convey. By deed of appointment, subsequently made, she did direct her trustees, in the event of her failure to designate other persons by her will, to convey to her husband, Stephen Jumel, for his life, and after his death, or if he failed to survive her, upon her death, to Mary Jumel Bownes. The persons who were to take were designated, and Justice Bradley thought the legal effect of her appointment was to vest the interests in the appointees; though a conveyance would be necessary to confer the legal estate, as he further said. But *Bowen* v. *Chase* is not an authority which I deem controlling upon the question before us now. The material questions considered by Justice Bradley concerned the character of the trusts created by Madam Jumel, in their relation to herself as beneficiary, and the effect of the conveyances made by the trustee, in obedience to her direction and appointment, subsequent to her husband's death.

Upon the question of the vesting quality of an estate, which is limited to take effect at a future day, upon the termination of a prior trust estate, in persons then to be ascertained, cases where the trust was to convey to definite persons named might be as unsatisfactory as authorities, as where the grantor or testator had given the remainder directly. It is the uncertainty here as to the precise persons, in whom would exist the right to enforce the execution of the power in trust, if, upon Mrs. Curtis' death, any estate remained to be conveyed, that introduces the element of contingency. The distinguished counsel for the appellant refers to many cases, in support of his proposition that the plaintiff's grantors, who were of the class entitled to the benefits of the power in trust, took vested remainders in the lands deeded by Mrs. Curtis, some of which involved questions arising prior to our Revised Statutes.

The revision made radical changes in the law of uses and trusts as it had existed, and it was intended that the law in that respect should have a new point of departure. It would be much easier to state reasons for our conclusion, if we had

only the statutory provisions to be guided by. It is undoubtedly settled, by authority of adjudged cases, that a conveyance by the grantee of the power in trust is not essential upon the termination of the trust estate, and that the statute operates then to annex the use and to vest the legal estate, without waiting for the trustee's conveyance. That principle, in a manner, by the force of judicial opinion, has been engrafted upon the statute provisions. In view of the many phases of uses and trusts presented to the courts, it is not remarkable that we should find observations in the opinions of judges not easily reconcilable with the conclusion in a particular case. I am not aware that any case presenting the precise question here can be found, though some may have a likeness in particular features.

In *Watkins* v. *Reynolds* (123 N. Y. 211), the question was not discussed as to powers in trust. Testator, there, left property upon an express trust for his daughter's life, and, upon her death, upon trust to convey to her heirs then living. There was no point made nor discussion had by courts or counsel as to powers in trust. It was simply held that when the trust terminated by the daughter's death, the trust estate vested at once in a son and daughter surving her, and a formal conveyance was unnecessary by the trustee. The point of the opinion, in that respect, was in holding that upon the daughter's death the title had vested in her heirs.

In *Genet* v. *Hunt* (113 N. Y. 158), the action was for the construction of a will made by Mrs. Riggs. Prior to and in anticipation of marriage she had executed a deed to trustees, upon the trust to apply the rents and profits to her use during life. If she died during coverture the trustees were to convey, as she by her will might direct, and, in default of such direction, to her heirs-at-law. Mrs. Riggs died, leaving a husband and children surviving, and by a will had undertaken to dispose of her estate. The question presented and passed upon was whether the trusts created by the will were valid, within the law of perpetuities, or were void for remoteness. It was held that the will was an execution of the power of appointment reserved in the trust deed, and, therefore, spoke from

the time of the execution of that grant. The result of that construction was to invalidate the trusts in the will, for offending against the statute, because extending beyond the permitted period for the suspension of the absolute ownership of property. With respect to Mrs. Riggs' position under the trust deed, it was held that she was no longer the absolute owner of the property, and that the only right of disposition she had over it was the power to appoint by will, and the power of disposition, not being absolute, because restricted to a disposition by will, was not equivalent to absolute ownership. The argument and opinion ranged over the point, in reality, as to whether Mrs. Riggs did not remain invested with such absolute ownership of the property covered by the trust deed, as to enable her to dispose of the reversion to it, as from the time of her death. It was decided she was not such an owner and had put it out of her power to dispose of it, otherwise than by a will in execution of the power in the trust deed.

The expressions in the opinion, which are seized hold of by the appellant as characterizing the interests of the persons entitled to take pursuant to the direction of the trust deed, must be read in connection with the text of the opinion, and as indicating merely the inalienable character of the trust property, except in the modes pointed out by the trust deed. But nothing in the opinion need be deemed as deciding that the persons, who might be entitled upon Mrs. Riggs' death to receive the trust property by virtue of the trust deed, took any vested legal estate in remainder upon its execution. The same learned judge who delivered the opinion in *Genet* v. *Hunt*, at the same term of court, in the case of *Goebel* v. *Wolf* (113 N. Y. 405), adverts to the rule upon the subject of the vesting or non-vesting of estates in language useful to the present contention. In the latter case the question was whether, upon the testator's death, his children took immediate vested estates, under a further trust created in his will for the trustee to divide the estate equally among his children, upon the arrival of his youngest child at the age of twenty-one years. It was contended that the gift was to the children as a class, and for

only such of them as should be living upon the termination of the trust. Judge ANDREWS said, in discussing that point (p. 412), "where the only gift is found in a direction to divide at a future time, the gift is future, and not immediate; contingent, and not vested." And then, taking up the facts of the case, he further said, "there is nothing on the face of the will to indicate that the testator contemplated the death of any of his children during minority.   *   *   *   The gift of the ultimate estate is not, in terms, to his children *living* at the time of the division, or to the *survivors* of his children, but the division is directed to be made 'among my children share and share alike.'" It was held, therefore, that the intention of the testator, as collected from the will, was merely "to define the period of enjoyment   *   *   *   rather than the period of the vesting of the shares." His reasoning upon the question of vesting would militate here against the vesting of any estate in Mrs. Curtis' children prior to her death; for the trust was to convey to the children *living* at the time of that event and the *surviving* children of such as may then be dead; terms which, in Judge ANDREWS' opinion in *Goebel* v. *Wolf*, were deemed to indicate futurity and contingency in the gift.

*Miller* v. *Wright* (109 N. Y. 194), decided that upon the death of the life tenant the trust terminated and the real estate vested in his children. That was a suit for the partition of real property, and the question was as to the effect upon the title and proceedings of the vesting of the interests of the children by reason of the life tenant dying, pending the partition proceedings. Judge EARL merely decided that the children should have been made parties, upon the death of the life tenant before judgment.

*Stevenson* v. *Lesley* (70 N. Y. 512), was an action for the construction of a will, which gave the residuary estate in trust for testator's grandchildren, share and share alike, to be paid and conveyed to each child as it became of age, and meanwhile to be applied in their support. After testator's death, another grandchild was born, and the contention was over its right to a share. It was held that, being born after testator's

death and before the time for distribution of the estate, the child was entitled to a share. *Woodgate* v. *Fleet* (64 N. Y. 566), was an action to determine the rights of various parties claiming through the grantor in a conveyance of lands upon trust. Under the trust deed the trust term had ceased, and the question arose and was litigated whether any and what estate had then vested, and that turned upon the point of the validity of a trust for after-born children, with respect to a suspension of the power of alienation. *Bruner* v. *Meigs* (64 N. Y. 506), was an action for the cancellation of a contract for the sale of land, and the decision was that the title proffered was defective for want of power in the trustees to convey. Their power of sale having terminated with the cessation of the trust estate, they could no longer contract to sell. It was held that the trust to convey upon the death of the life tenant did not constitute a trust, or require the estate to be vested in the trustees, but, as Judge ALLEN said, "it was merely a power in trust and could be executed as such." It was considered that the vesting of the estate, however, would not be defeated by the neglect to convey, as it did not depend upon the execution of the power. The case is not in point, either with respect to the nature of the action or with respect to what was decided. The life tenant had died and the contention was over the question of whether the trust to convey left a title in the trustees which they could transfer under the power to sell. *Adams* v. *Perry* (43 N. Y. 487), was an action for the construction of a will, and the validity of a testamentary devise for the benefit of the president, etc., of the Lowville Academy was in question. The executors were directed to convey the land to the trustees of the academy upon certain trusts, and it was held that the executors took no trust estate in the land, but that it vested in the corporation subject to the trust imposed. *Re Livingston* (34 N. Y. 555), was a proceeding for the removal of a trustee of an express trust, instituted by persons entitled to take upon the death of the beneficiary. It was held, on the question of interest, that a conveyance would be unnecessary by the trustee to effect title, as the transfer

would be made by operation of the statute when the trustee's office terminated.

*Gilman* v. *Reddington* (24 N. Y. 9), was an action for the construction of a will. The trust there was for the benefit of testator's three infant children, until the two youngest attained the age of thirty years or died under that age. The youngest died after the testator and at the age of two years. The question was as to the limitation of the trust during the two lives, and it was held valid. It was held that the children took vested remainders at testator's death. But the trust was for specified children. The testator had created an estate for them, which he intended they should be supported from up to a certain age, and then they were to have it absolutely. The estate was theirs, beneficially, from the instant of its creation, and the enjoyment only postponed. An expression of Judge COMSTOCK's in the opinion might be profitably referred to. He said that "trusts to convey lands to a beneficiary are not enumerated in the statute of uses and trusts, but they are valid as powers in trust where the purpose of the power is lawful."

I have carefully considered these cases cited for the appellant and many other authorities in the books, and I have not found any so in point as to be controlling here. The question of trusts and powers, with which we are dealing, is one hedged in with difficulties and fraught with the risk of leading courts in apparent opposition to previous decisions. In its discussion the ingenuity of the legal mind has been exerted in the direction of subtle distinctions, and has been influenced by abstract propositions and led by authors, who wrote in an atmosphere charged with technicalities and abstruse learning. If, in applying the doctrine of trusts to a given case, we are able to adhere to fundamental principles, the more exact should be the solution; and unless prior adjudications comprehend a decision of the precise question presented, they are not necessarily controlling upon the case at bar. There is a distinction between the present case and the cases in the books where the testator's devise, or the grant, is to a trustee

for the life of another, and, upon the death of a life tenant, then to others who are named, or who belong to a class. In such cases we may be bound by authority to hold that the remainder vests, when the instrument goes into effect, in the remaindermen named, or in those of the class who may be then living, subject, of course, to be opened to let in after-born members. But, in this case, there is no grant to those who may subsequently receive the estate, and they will take only through the execution of a power in trust; or by the statute being set in operation to execute the use, by reason of the death of the life tenant and the consequent termination of the trust estate. How can we predicate a vesting meanwhile, whether we consider the character of the grant, or whether we consider the intention of the grantor.

The intention of a grantor, whether express or implied, cannot control or interfere with the operation of a rule of law; but I think, when clearly evidenced, it can be made helpful, and may, in such a case as this, aid in the application of the established rules. We are commanded by the statute to give effect to intention, in our construction of an instrument so far as it is possible. (2 R. S. 748, § 2.) From the language of the trust clause, it is evident that the grantor Mrs. Curtis desired, in the first place, to assure to herself, by placing the estate in another's hands as trustee, beyond the risks attendant upon her husband's acts or business, and beyond his influence and control, a life income from the estate; and, in the next place, after her life had ended, if any of her children should then be living, or any survivors of deceased children, that they should have it divided among them. She could have effected this latter purpose by a direct gift, or grant in remainder, contained in the instrument; or she could do it as it was done by adding another trust to that already created; namely, by empowering her trustee to convey the lands after her decease, in the due proportions, to her children. There does not seem to be any confusion in the thought that she as deliberately purposed, as she as deliberately expressed herself in language, that during her life the whole estate should be in

the trustee, for her sole use and benefit, and that all other interests should be in abeyance until the happening of her death; by which the trust estate would terminate, as the event upon which limited, and when her trustee might dispose of it by conveying it to the then ascertained members of a class named. Has she not intended, in so alienating her estate, while securing to herself a life income, as well, to assure herself that after her death, and not until then, those of her children who survived her, or the descendants of any predeceased children, should be benefited by it and derive enjoyment or support from its possession. What rule of law prevents our effectuating an intention, which is so cogent and coercive, and compels us to hold that from the delivery of the grant to the trustee the children of the grantor were vested with a legal estate in remainder? Why shall we not say that here the grantor intended to and did create a trust to convey the estate to certain persons, who were only to be determined upon the happening of the event of her death; a disposition executory and not executed in its nature, in the ordinary use of these terms, and enforceable as a power in the trustee; however unnecessary to the vesting of the estate, at the time when the power might be exercised by the trustee, the actual exercise of the power would be? Because the statute would operate to execute the use in the intended beneficiaries of the power does not answer the question. Though the statute will execute the use, when the trustee might, or should, execute the power, the statute does not operate before that time. If the trustee cannot, by the terms of his trust, exercise his power until the happening of the event which liberates it, the statute is not previously moved. It cannot operate upon the subject of the power before the power by its terms is itself operative. Now, this is just the difficulty which such a power in trust raises in the way of the vesting of a future estate. It is executory, in the sense of calling for the performance of an act in the future, which the donor might have performed, but which he directs to be done after his death by the trustee, in a certain mode to be determined

at the time of performance by the facts then ascertained. It is necessarily inoperative until the happening of the future event. A future estate is described by the statute to be one commencing at a future day, and though it is capable of being vested, that vesting is determined, under the law, by the question, whether there is a person in being who would have an "immediate right to the possession." That "immediate right," I take it, exists by force of some gift in remainder made directly by the grantor or testator, and it would not be, strictly speaking, an "immediate right," if the estate could only come in the future by operation of the statute, or by a conveyance under the power. Where the future estate is one which is to be given through a power in trust to persons not ascertainable until after the happening of a certain event, how can there be a vesting meanwhile? In cases where a trust is created, which is not authorized by the 55th section of the statute, but is validated as a power in trust by the 58th section, no estate passes at all, and the title remains in the grantor, or descends to the persons otherwise entitled, as the case may be; the grantee being merely the trustee of a power. (2 R. S. 729, §§ 58, 59; *N. Y. Dry Dock Co.* v. *Stillman*, 30 N. Y. 174; *Downing* v. *Marshall, supra.*)

The rule in equity as to the joinder of parties in a foreclosure action affects those who have vested estates in remainder or reversion, and does not concern itself with those who have future contingent interests merely. (Story's Eq. Pldgs. § 144.) I cannot see how Mrs. Curtis' children acquired any vested interest in the equity of redemption, for lack of any immediate right to the possession of the lands through a grant to them. What interests were not in Mrs. Curtis' trustee remained in her, while she lived, and conjointly they represented all estates in the lands. She had not granted them to any person, other than her trustee; but had merely authorized them to be conveyed at some future day and to persons then to be ascertained.

In *Bennett* v. *Garlock* (79 N. Y. 302) the question concerned the nature and tenure of the plaintiff's interest in a trust estate,

which her parents had created by deed to trustees upon trusts
to sell for the payment of debts; to apply net profits for the
support of the grantors during their lives and the life of the
survivor of them, and to hold the residue for such persons
as shall be the right heirs of the grantors at the time of
the death of the survivor of them. It was held that she
took merely an equitable interest in the estate and that "if the
estate of the trustees is defeated in any way    *    *    *    the
remainder must be defeated and the plaintiff's right barred
because it rests upon the same title." It was pertinently
remarked in the opinion, with respect to the plaintiff's right
to the possession of the land in the trustee's hands upon her
mother's death: "Whatever way it was conveyed to her, by
the trustees themselves or by force of the statute, she took
subject to the acts of the trustees.    *    *    *    If by their
neglect or consent an estate had been acquired by the defend-
ant, or he had obtained an advantage which prevented the
trustees from asserting their title, the plaintiff standing in their
place is equally estopped and prevented." I cite the case not
as one necessarily decisive of the question before us, but as
illustrative and in support of the proposition that all interests
in the land were represented by Mrs. Curtis and her trustee,
and their joinder as parties was sufficient.

Where such a power in trust follows in a grant upon the
creation of an authorized express trust, I think the true prin-
ciples of construction underlying the question of interests to
be that, during the continuance of the preceding trust estate,
the whole title is in the trustee, subject to the execution of the
trust, and that the reversion is in the grantor and his heirs,
subject to the execution of the power in trust; that the dispo-
sition of the estate after the grantor's death, by way of a
power in trust to convey to members of a class who may then
be ascertained, gives to any then existing individuals, who
might fall within the description of the class, an interest
purely contingent, as well as future in its nature; and that
the destruction of the estate in the grantor and trustee, as by
proceedings in equity to foreclose a prior mortgage, destroys

it as to the intended beneficiaries of the power in trust, by preventing the operation of both power and statute, through which alone their interests would come.

The recent decision of this court, in its Second Division, in the case of *United States Trust Company* v. *Roche* (116 N. Y. 120), is much in point. A conveyance had been made of real estate to a trustee, in trust to receive the rents and profits during the life of the prospective wife of the grantor, and, after her death, in further trust, to sell and to divide the proceeds among the issue of the marriage, in case there were any living. After the marriage the realty was mortgaged. Default occurring in payment, foreclosure proceedings were instituted. It was objected as a defense that a child of the marriage, living and of full age, was a necessary party. FOLLETT, Ch. J., delivering the opinion of the court, held that the joinder of the child was not necessary, as he "had not a vested interest in the subject of the trust, nor in its avails. His interest is contingent upon his surviving his mother." The proposition was not reasoned upon, but was nakedly stated and assented to by the members of that court.

Our conclusion is that at the time of the foreclosure proceedings the then living children of Mrs. Curtis did not have any estate in the lands in question and their equitable interests were all in abeyance. The whole estate was transferred to the trustee, and every interest not embraced in the trust remained in the grantor. Until her death terminated the estate in the trustee, no estate could vest in any others. The happening of the event which would render the trust power to convey enforceable in favor of persons then ascertained would set in operation the statute and vest the estate in those persons; but as meanwhile she and her trustee had been divested of the estate, none remained to which future interests might attach.

The importance of this case, in the large amount of property involved, as well as in the legal questions presented, and the great skill and ability, with which these questions have been argued by counsel, warrant this somewhat extended dis-

cussion of the grounds upon which I advise an affirmance of the judgment appealed from.

The judgment should be affirmed, with costs.

All concur (Ruger, Ch. J., in result), except Andrews, J., dissenting.

Judgment affirmed.