McLENEGAN and others, Respondents, vs. YEISER, imp., Appellant.

*September 8—September 23, 1902.*

*Trusts and trustees: Power of sale: Purchase by life tenant: Giving credit.*

1. Land was devised in trust for the use of testator's daughter during her life and at her death for the use of her children, and the trustees were directed to sell the land if requested by the daughter and hold or invest the proceeds in trust for the same uses and purposes. *Held*, that whether the will did or did not create a trust for one of the purposes enumerated in sec. 2081, Stats. 1898, it did confer upon the trustees a power in trust to sell the land—valid in the one case under sec. 2082 and in the other under sec. 2084.

[2. Whether a sale of land in order to substitute the proceeds therefor as *corpus* of an estate, to pass to the devisees of the land, is a sale "for the benefit of legatees," within the meaning of subd. 2, sec. 2081, Stats. 1898, not determined.]

3. Where there is no valid and effective purpose to a testamentary trust except that of selling the land devised in trust, such purpose must be assumed to be the primary one of the testator.

4. In determining the validity of a trust to sell land, the duty of the trustee to sell will be deemed imperative if he is positively directed to sell whenever the beneficiary so elects.

5. A life tenant of land is not precluded from purchasing at a sale thereof by trustees under a power, merely because he is able to control the time of selling.

6. Under a power to sell lands and invest the proceeds it is proper, in the absence of any provision to the contrary, to take a mortgage on the property for a reasonable part of the price.

7. In such a case the sale was made to the person entitled during life to the income of the proceeds, and a mortgage was accepted

for a large part of the price, running for twenty-five years at two per cent. The life tenant outlived the maturity of the mortgage. *Held,* that the sale would not be declared void because of the extent of the credit given at such low rate of interest, no prejudice having resulted to the remaindermen.

APPEAL from a judgment of the circuit court for Rock county: B. F. DUNWIDDIE, Circuit Judge. *Reversed.*

In 1869 one E. C. Reigart died testate in Pennsylvania, leaving a large estate both in Pennsylvania and in Wisconsin, which, in the latter state especially, consisted largely of real estate. His will attempted, in addition to certain special donations, to divide his estate amongst his seven children, the method adopted being to devise specified lands for the benefit of each child, apparently in each case already occupying those lands, and to fix a value upon such specific lands, to be charged against the child as a part of his or her oneseventh of the estate. Such devise of lands in each instance was attempted to be made not directly to the beneficiary, but to some other persons in trust for the beneficiary for life, and for his or her descendants upon his or her death, with provision as to some of the children for a further remainder to heirs of the testator upon failure of issue. Amongst these several devises is No. 14, specially involved in the present action, which was in the following words:

"The following described four tracts of land and premises, lying contiguous in the town of Turtle, Rock county, state of Wisconsin, to wit, . . . I give and devise to my sons James H. Reigart and John Reigart, and to their heirs and assigns, in trust, however, for the use of my before-mentioned daughter, Annie C. Slaymaker, for and during the term of her natural life, and at her decease in trust for the use of all the children of the said Annie C. Slaymaker then living, and the issue and descendants of any of them being then dead, their heirs and assigns, forever, *per stirpes,* in equal shares and parts, subject, however, to the payment of five hundred dollars annually to the husband of said Annie C.,

if she leave one surviving her, during the time he shall remain unmarried; and in default of any child, children, or descendants of my said daughter, Annie C. Slaymaker, living at her decease, then in trust for the use of my heirs at law, now or then resident in the said state of Wisconsin, in fee, subject as aforesaid; and I charge the said real estate so devised in trust for her use, etc., to my said daughter, Annie C. Slaymaker, at and for the sum of eighteen thousand dollars, to be accounted for in the distribution of my estate."

After thus defining the rights of the several devisees, direction is given in several paragraphs for the sale, either by executors or trustees, of certain pieces of real estate, and then comes paragraph 21, in the following language:

"If any of my children shall deem it advantageous to have the real estate hereinbefore devised in trust for their use severally during life sold, and shall request the trustee or trustees who hold the same to sell it, then I order and direct the trustee or trustees to sell and dispose of the same, or any part thereof, and convey it to the purchaser or purchasers, his and their heirs and assigns, in fee simple, clear, free, and discharged from the trust, and to hold the proceeds of the sale thereof, or invest the same in the purchase of other real estate in any of the states or territories of the United States of North America, wherever the *cestui que trust* shall desire it, and take and hold the same in trust for the same uses and purposes as the premises sold were held under this will."

In June, 1871, at the request of Annie C. Slaymaker, the trustees named in the fourteenth paragraph of the will in form sold and conveyed the real estate named in that paragraph to one Magraw for the expressed consideration of $18,000, which was paid, $15,000 thereof by a mortgage upon the same land, securing notes of Annie C. Slaymaker and her husband, payable twenty-five years after date, with two per cent. interest; said notes being payable to said Magraw, and by him indorsed without recourse to the trustees. The further consideration was paid by notes of said Annie C. Slaymaker and her husband for $3,000, secured by mortgage

upon other property, never recorded, but which have been by the trustees marked "Canceled," and delivered up. The deed to Magraw declared that it was made in pursuance of the power of sale in trust contained in E. C. Reigart's will, and contained full covenants of warranty, and that it was made in pursuance of the request of Annie C. Slaymaker, who, in evidence thereof, joined therein. In February, 1872, Magraw executed and delivered conveyance of the same lands to Annie C. Slaymaker and her husband for the expressed consideration of $18,000, which deed was recorded in August, 1875.

Samuel H. Slaymaker, husband of Annie C., died in the year 1882, childless, and by will devised all his property to her. Thereafter she married the appellant, *George O. Yeiser,* who was her husband at the time of her death, which occurred in March, 1900, she leaving no children or descendants, and by will bequeathing and devising all her property to her husband, the appellant. In 1885 the trustees, James H. and John Reigart, were removed from their trust, and H. H. McLenegan, one of the defendants, was appointed in their place. The plaintiffs are certain of the children and certain children of deceased children of the original testator, other of his heirs at law being joined as defendants. The complaint denies the validity of the trust; denies any authority in the trustees to make the sale in question; contends that, if such power existed, the sale was collusive and intended merely to transfer the legal title to the life tenants, in fraud of the purposes of the will and the rights of the remaindermen; prays construction of the will, the avoiding of that conveyance, and the reclamation of the specified real estate to the existing heirs at law of E. C. Reigart.

The court found that said testator left surviving seven children, who were all of his heirs at law. Of these, one never resided in Wisconsin. All of the others did reside there, either at the time of the testator's death or of Annie C. Slaymaker's. That certain of said children had in the in-

terval died, each of them leaving descendants, some of whom resided in the state of Wisconsin at the time of Annie C. Slaymaker's death, and some did not. The court further found the execution of the deed to Magraw above mentioned, and the delivery to the trustees of the notes and mortgage therefor; also the conveyance by Magraw to the Slaymakers; that Magraw paid no consideration for the conveyance, since he assumed no liability for the Slaymakers' notes; that no part of the consideration expressed in the deed from Magraw to the Slaymakers was ever paid by them, or ever intended to be paid; and further found that these conveyances "were not made in good faith, and as a *bona fide* exercise of the power of sale contained in the said will of the said Emanuel C. Reigart, but were, and each and all of them were, made for the sole purpose of vesting the legal title to said lands in the said Samuel H. Slaymaker and Annie C. Slaymaker, and divesting the interest of the heirs at law of the said Emanuel C. Reigart." It was also found that the sum of $18,000 was a fair and adequate consideration for the deeded premises; that ever since 1872 Annie C. Slaymaker, with her successive husbands, and since her death the appellant, *Yeiser,* have been in absolute and exclusive possession and control of said real estate, and have made extensive and valuable improvements on the premises.

The court adjudged the conveyances to Magraw and from him to Annie C. Slaymaker and husband invalid and void, and that the premises now belong to the descendants of E. C. Reigart in defined proportions, excluding the appellant, *Yeiser,* from any interest therein; directed that *Yeiser* execute deed of all his interest, and that thereupon the $15,000 notes and mortgage be canceled and destroyed. Certain other portions of the judgment are not recited, for the reason that they are not attacked on this appeal. From the portions mentioned *George O. Yeiser* brings this appeal.

For the appellant there was a brief by *Fethers, Jeffris & Mouat*, and oral argument by *M. O. Mouat* and *M. G. Jeffris*.

For the respondents there was a brief by *Quarles, Spence & Quarles*, and oral argument by *George Lines*.

DODGE, J. It was substantially conceded upon the argument that the trust attempted to be created by the fourteenth paragraph of the will did not satisfy the requirements of our statute, no duties being imposed upon the trustees such as are permitted by sec. 2081, Stats. 1898, to support a grant or devise in trust, so as to vest the legal estate in the trustees. Appellant, however, contended that, though that trust fails, there was by the twenty-first paragraph conferred upon the same persons a good and valid power in trust to sell and convey these lands. That claim is vigorously contested by the respondents here, although it seems to have been sustained by the trial court. That question is therefore first for consideration. Two sections of our statutes are suggested, under one or other of which may exist a power to sell, namely, secs. 2082 and 2084, Stats. 1898, viz.:

"SEC. 2082. A devise of lands to executors or other trustees to be sold or mortgaged, where such trustees are not also empowered to receive the rents and profits, shall vest no estate in the trustees; but the trust shall be valid as a power and the lands shall descend to the heirs or pass to the devisees of the testator subject to the execution of the power."

"SEC. 2084. When an express trust shall be created for any purpose not enumerated in the preceding sections of this chapter no estate shall vest in the trustees; but the trust, if directing or authorizing the performance of any act which may be lawfully performed under a power, shall be valid as a power in trust, subject to the provisions in relation to such powers contained in the next succeeding chapter."

By the language of the will under consideration the property is devised to the trustees, and they, by paragraph 21, are commanded to sell and convey the same. That this constitutes a devise of lands to trustees to be sold seems too plain

for more than statement, and, if such sale is to be made "for the benefit of legatees," it is one of the express trusts in terms authorized by sec. 2081, subd. 2, merely being limited by sec. 2082 so far that title does not vest in the trustees. It is, however, unnecessary to decide whether a sale of land, in order to substitute the proceeds therefor as *corpus* of an estate to pass to the devisees of the land, falls within the idea expressed by the words "for the benefit of legatees," for, if it does not, then the provision falls squarely within sec. 2084. The will then creates an express trust for a purpose not enumerated by preceding sections. Such express trust is made void by sec. 2071, but the power to do the act is preserved by sec. 2084, if such act be one which may lawfully be performed under a power. Sale and conveyance are acts which might be so performed at common law. *Townshend v. Frommer,* 125 N. Y. 446, 458, 26 N. E. 805; *Holly v. Hirsch,* 135 N. Y. 590, 32 N. E. 709. When for the benefit of others, they are made lawful by sec. 2122, Stats. 1898. *Smith v. Bowen,* 35 N. Y. 83, 89. See, also, *Skinner v. Quin,* 43 N. Y. 99.

Respondents seem to contend, however, that the twenty-first paragraph of the will does attempt to authorize a sale for the benefit of legatees, which is a purpose expressly enumerated in sec. 2081; whereby sec. 2084 is rendered inapplicable, so that we must return to sec. 2082, which preserves the power of sale, although it repudiates any title in the trustee. Counsel then argues that the power cannot be preserved under this section, because it does not satisfy the requirement of sec. 2081, as defined by the courts of New York; that, in order to a valid trust to sell real estate under that section, the purpose to sell must be the primary object of the trust, and the duty to sell must be imperative. We fail to discover any lack of these elements. It is substantially conceded that there is no valid and effective purpose to this trust except that of selling the property; hence in the effort to find a valid

purpose in the testator's directions we must assume that as his primary one. The duty of the trustees to sell is clearly absolute, and not discretionary. They must sell whenever the beneficiary so elects. Apart from these considerations, however, counsel's argument serves only to create for him a dilemma, either horn of which is alike inconsistent with the result for which he contends. If the trust to sell is not such as is enumerated in sec. 2081, the power of sale is valid by virtue of sec. 2084. If it be such as is enumerated, then a power in trust arises under sec. 2082. This is the result of the authorities cited, for in all of the cases where the *trust* to sell was held invalid for the reasons now urged, the court recognized impliedly or declared expressly that a power to sell remained, although no title vested in the trustee. *Cooke v. Platt,* 98 N. Y. 35, 39; *Chamberlain v. Taylor,* 105 N. Y. 185, 192, 11 N. E. 625; *Woerz v. Rademacher,* 120 N. Y. 62, 68, 23 N. E. 1113; *Steinhardt v. Cunningham,* 130 N. Y. 292, 300, 29 N. E. 100. We cannot escape the conclusion that by paragraph 21 of the will there was conferred upon John and James Reigart a power in trust to sell the lands which they did sell, and which by mesne conveyances have now come to the appellant.

The next contention in support of the judgment is that such sale is void because not made in good faith, by which is meant merely that it was in fact made to the life tenant, who had an election as to when it should be made. There is no contention that the trustees did not obtain a full and adequate nominal price, nor that they in any wise failed to make every exertion to obtain the highest possible one. The respondents insist, and apparently the circuit court held, that the life tenant was excluded from being a purchaser, not alone because she was life tenant, but because she was able, under the terms of the will, to control the time of selling. Recognizing as fully as any court in the country the impropriety of allowing those acting in fiduciary capacities to become purchasers

at their own sales (*In re Taylor Orphan Asylum,* 36 Wis.
534; *Hulson v. Jenson,* 110 Wis. 26, 40, 85 N. W. 689), we
are nevertheless unable to agree with respondents that the rea-
sons for so holding extend to Mrs. Slaymaker under the cir-
cumstances of this will.    Such holding would carry to undue
and impracticable refinement the duty of those having rights
of election, by exercise of which others may be affected.
Counsel suggests that she might select an inopportune time,
when prices were depressed, and, by then demanding a sale,
cause loss to the reversionary interests; but the same is true
of a creditor secured by mortgage or trust deed, even of one
exercising his right to execution sale; but courts have never
considered any rule of ethics or of public policy to exclude
such creditors from purchasing.    True, courts of equity may,
perhaps, under peculiar circumstances, lend aid to prevent
actual injury from abuse of such powers, and possibly might
have done so here had Mrs. Slaymaker attempted wreckage of
the value of the reversion.    Such power in courts, it is con-
fidently believed, is sufficient to guard the rights of others,
without imposing on those having merely an election as to the
time of a sale the absolute prohibition deemed necessary for
trustees.    We are not surprised that no decided case has been
cited in support of such a restriction, nor that somewhat ex-
tended search on our part has revealed none.    Indeed, the
only analogous decision we have found is *Howard v. Ducane,*
1 Turn. & R. 81, where Lord ELDON, as chancellor, held that
a life tenant, whose consent and direction was required for
exercise of a power of sale, was not precluded from pur-
chasing.

Respondents further insist that the attempted sale was in-
valid because of the credit given for the price.    This conten-
tion applies more particularly to the acceptance of notes and
a securing mortgage for the $15,000, payable twenty-five
years after date, with only two per cent. interest; for the pay-
ment of the other $3,000 of purchase money is established by

the acknowledgment of payment contained in the deed, with no contradiction from the evidence. It is said this was beyond the power, which, being silent as to terms, it is assumed must be construed to authorize sale for present money only. To this proposition is cited *Waldron v. McComb,* 1 Hill, 111, which, however, was reversed. *McComb v. Waldron,* 7 Hill, 335. Also is cited 2 Perry, Trusts, § 786*a,* where, however, we find recognized a distinction when power of investment of proceeds exists. In such case it is recognized that acceptance of mortgage on the property sold is a proper exercise of the trustee's discretion; a view supported by *Leggett v. Hunter,* 19 N. Y. 445. With this view we agree. It seems plain that when the duty of a selling trustee is to keep proceeds of a sale invested, he cannot do so more surely than by leaving a reasonable amount thereof secured upon the property sold. Nothing can then happen to the estate more prejudicial than the return to it of the very property parted with, which is not injurious if enough of the price is collected, or otherwise secured, to cover expenses of sale and of reclamation. In the instant case the low rate of interest has injured no one, since Mrs. Slaymaker, the life tenant, who during her life was the only one interested in the amount of income, outlived the maturity of this mortgage. We do not wish to be understood, however, as approving the extent of credit at this rate of interest. Active precaution on the part of the trustees would have suggested maturing such liability upon the death of Mrs. Slaymaker within the twenty-five years; but, in view of her age and expectancy of life in 1871, we cannot say that the granting of such credit requires a court of equity to declare the sale void, when no prejudice has resulted to the remaindermen.

We thus reach the conclusion that by E. C. Reigart's will a valid power in trust to sell the lands in question was granted, and that such power has been validly executed, so that the real estate passed to the purchasers, and no title re-

mains in the plaintiffs or other heirs of E. C. Reigart. Any construction of the will as to their relative proportions thereunder is therefore unnecessary. The question whether or not the $15,000 notes and mortgage given for part of the purchase money have been paid has not been tried, and is not presented by the complaint. A denial of all the relief sought by plaintiffs must result from the conclusions reached.

*By the Court.*—Judgment reversed, and cause remanded, with directions to dismiss the complaint.

Cassoday, C. J., took no part.