Wilson, J.
This cause came into this court on appeal from the court of common pleas of Hamilton county and is now submitted to the court on plaintiff’s demurrer to the answer and cross-petition of the defendant, Edgar Stark, executor of the estate of Mary Ann Britt, deceased.
The demurrer rests upon the ground that the allegations of the answer, and also of the cross-petition, do not constitute either a defense or a cause of action against the plaintiff.
The court’s disposition of this demurrer will in effect determine the rights of the respective parties to this action.
On February 26, 1913, the plaintiff, Morris U. Bernheim, made the following proposal for the purchase of certain property of the estate of Mary Ann'Britt, deceased:
“Cincinnati, Ohio.

“February 26th, 1913.

“Edgar Stark, Executor & Trustee Under the

Will of Mary Ann Britt, deceased.

“I hereby agree to purchase the property belonging to the Estate of Mary Ann Britt deceased, situated in the City of Cincinnati, Hamilton County, Ohio, and known as Nos. 126 and 128 W. Eighth St., and 804 and 806 Elm St., bounded and described as follows:
“Beginning at a point in the north side of Eighth St., thirty-six (36) feet more or less east of Elm St., thence eastwardly along Eighth St., fifty-nine feet, four and one-half (59 ft., Ayi in.) more or less; thence northwardly parallel to Elm St. ninety (90) feet more or less to Weaver Alley; thence *42 westwardly along Weaver Alley ninety-five feet, four and one-half (95 ft., 4^ in.) more or less 'to Eilm St., thence southwardly along Elm St. thirty (30) feet more or less; thence eastwardly parallel to Weaver Alley thirty-six (36) feet more or less; thence southwardly parallel to Elm St., sixty (60) feet more or less to Eighth St., at the place of beginning.
“The consideration for said property is to be one hundred and twenty-five thousand ($125,000) dollars to be paid as follows: Upon the acceptance of this offer I will deposit five thousand ($5,000) dollars with the Union Savings Bank & Trust Co., as a special deposit on which the said company is to pay interest at the rate of 3% per annum. In the event that the courts decide that the will of Mary Ann Britt is valid, said sum of five thousand dollars shall be paid by The Union Savings Bank & Trust Company to the executor and trustee under the will of Mary Ann Britt, and upon the tender to me of a lease containing the provisions hereinafter set forth, duly executed by him, I will further pay to such executor and trustee the sum of forty-five thousand ($45,000) dollars in 'cash. Said lease is to be for twenty years from date and to provide for a ground rent of 5% net upon the remainder of said purchase price, to-wit: seventy-five thousand ($75,000) payable quarterly. The lessee shall therein obligate himself to pay in addition to said ground rent, all taxes, rates, charges and assessments of every kind which may become a lien upon the property after the date of said lease and, further, that he will within ten (10) years from the date thereof erect *43 a 'building or buildings upon said property so leased, satisfactory to the lessor, and keep the same insured in a sum and in companies satisfactory to the lessor, loss, if any, payable to the said lessor on account of the purchase price of said property or to be applied in re-building, as thé lessor may elect'. But if the lessor elect to take the insurance on account of the purchase price the lease' shall terminate, and the balance of the purchase price, if any, become payable.
“Said lease -shall further contain a privilege to the lessee to -purchase said property at any time after fen years from date, upon giving six months’ notice in writing to the lessor.
“If the executor and trustee under the will of Mary Ann Britt can not give me a good and legal title to all the property above named, I am to have the right to cancel this obligation to buy said property, and in that event the $5,000 paid by me on the acceptance of this offer is to be refunded to -me, together with the interest on said deposit, at 3% per annum.” ¡ i.A
Which proposal or offer was accepted by Edgar Stark, defendant, as the representative of said estate, in the following language:
“Cincinnati, Ohio,
“February 27, iprj.
“I hereby accept the foregoing offer, upon the conditions therein named, and agree to make the lease therein provided for, in case the will of Mary Ann Britt is sustained.”
*44 This action was instituted hy plaintiff for the purpose of obtaining a cancellation of the contract created by said offer and acceptance, and the return of the sum of five thousand dollars deposited under the terms of said contract, and in his petition he alleges as grounds therefor that the defendant, Edgar Stark, executor and trustee under the will of Mary Ann Britt, deceased, was, under the laws of Ohio and under the terms of said will, without authority or power to enter into any contract whereby he could execute a lease for the time and upon the terms in said contract set forth, and, further, “that he is without power, under said will at this time to enter into such a contract or to perform the stipulations therein set forth;” that said Edgar Stark, as executor and trustee under the will of Mary Ann Britt, deceased, can not give a good and legal title to all of the property described in the petition.
To this petition the defendant, Stark, executor, filed an answer and cross-petition, admitting certain allegations of the petition, the death of Mary Ann Britt, leaving a will, a true copy of which is attached to plaintiff’s petition; that said will was contested in case No. 146202 of the common pleas court of Hamilton county; that he entered into the contract set forth in plaintiff’s • petition; that the plaintiff deposited the five thousand dollars called for under said contract; and that plaintiff had made a demand of him to return said five thousand dollars, with which demand defendant refused to comply. And further answering, defendant denies •that he is without authority or power under the laws of Ohio and under the terms of the will of *45 Mary Ann Britt, deceased, to enter into any contract whereby he could execute a lease upon the premises described for the time and upon the terms set forth in said agreement; and denies that he can not give a good and legal title to all of the property described in the petition; and further denies the right of plaintiff to cancel said agreement. And further by way of answer defendant says that the last will and testament of Mary Ann-Britt was sustained by the judgment of the common pleas ■court of Hamilton county on June 29, 1915; that subsequent thereto the defendant duly executed a lease of the property described in the contract in accordance with the terms and conditions expressed in said contract, and on the 7th day of July, 1915, tendered said lease to the plaintiff and demanded of plaintiff the payment of $45,000 in cash and that the plaintiff execute said lease, all of which plaintiff refused to do., Defendant further alleges that all of the devisees and beneficiaries under the will of Mary Ann Britt, deceased, prior to the making of the contract of February 26, 1913, approved of the same and requested the defendant to enter into said contract with plaintiff. And by way of cross-petition the defendant alleges that he'' was appointed as executor and trustee under the will of Mary Ann Britt, deceased, and that he is now acting as such; that on February 26, 1913, he entered into said contract with plaintiff, and that' he entered into the contract with the approval and at the request' of all the devisees and beneficiaries under said will; that the plaintiff deposited the said sum of $5,000 as required by the contract; that the will of Mary Ann Britt wás sustained by the court *46 of common pleas of 'Hamilton county, Ohio; that on July 7, 1915, he duly executed in duplicate and tendered to plaintiff a lease in conformity with the terms and conditions set forth in said contract, and demanded of plaintiff the $45,000 in cash called for by said contract; that the plaintiff refused to pay said sum of $45,000 and refused to execute said lease; that he had complied with alb the terms and conditions of said contract but ’ that the plaintiff had refused to comply with said contract and to carry out the terms thereof. The defendant thereupon prays for a judgment against the plaintiff for said sum of $45,000 and interest from July 7, 1915, and for an order requiring plaintiff to perform his ■part of said agreement by executing’ the lease provided for in said agreement, and for such further or other relief as the defendant may be entitled to in equity.
■u„ To -this answer and cross-petition the plaintiff demurred, for the reasons hereinbefore set forth.
• The demurrer presents for the consideration of the court two legal propositions:
1. Could the executor and trustee — assuming that he had the power and authority under the will to sell or lease the property described in the agreement — enter into an agreement such as the one described in the petition for a sale or lease of said property during the pendency of the action contesting the validity of said, will?
2. Has the executor and trustee under the terms and provisions of the will of Maty Ann Britt the power and authority to make a sale or lease of said property on the terms and conditions expressed in the agreement under consideration?
*47 The will of Mary Ann Britt, deceased, provides as follows:
"In the Name of God, Amen.
“I, Mary Ann Britt, being of sound mind, do make and publish this my last will.
"Item First. I direct my Executor and Trustee hereinafter named to set apart and keep suitably invested sufficient of my estate to produce a net yearly income of Forty-eight Hundred - ($4800) Dollars and from said income pay monthly during life the sum of One Hundred Dollars to each of the following persons, to-wit: my brother Francis I. Partridge, my niece Mrs. McEwen, my niece Mrs. Dixon and my niece Blanche Partridge.
“Item Second. I direct my said • Executor and Trustee to- set apart and keep suitably invested a sum 'sufficient to yield a net income of One Plhndred Dollars per month and pay the same monthly to my nephew Arthur J. Partridge, son of said brother, until he arrives at the age of twenty-five years and then to pay to him the principal sum so invested.
“Item Third. I direct my said Executor and Trustee promptly after my death to pay the sum of One Hundred Dollars to each of five priests in the diocese of Cincinnati to be named by the Most Rev. Archbishop, with the obligation of saying masses for the repose of my soul. Also to pay promptly the following charitable bequests: to the St. Joseph Orphan Asylum now at Cumminsville the sum of Five Hundred Dollars; to the Sisters of Charity *48 for Seton. Hospital the sum of Five Hundred Dollars; to the Sisters of the Good Shepherd for the institution now conducted by them on Price Hill the sum of One Hundred Dollars.
“Item Fourth. I give to my sister Mrs. Margaret Orr the full one-third of my estate.
“Item Fifth. All the rest and residue of my estate I give as follows: one-fourth thereof to. my nephew Arthur J. Partridge, one-fourth to my niece Mrs. McEwen, one-fourth to my niece Mrs. Dixon and one-fourth to my niece Blanche Partridge. Said rest and residue shall be divided upon the death of my brother Francis I. Partridge. Thereupon the provision of One Hundred Dollars a month to my nephew and nieces shall cease.
“Item Fifth. Should any of my legatees contest this my will, his or her portion shall become part of the residue of my estate.
“Item Sixth. I nominate and appoint Edgar Stark, or whoever may be the trust officer of the Union Savings Bank and Trust Company of this City, Executor and Trustee of this my will. I give him full power to sell, lease, divide or rent any of my real of personal property and execute proper instruments for that purpose, to make repairs or improvements, to make and change investments and generally to do such things as may be necessary or proper in the administration of my estate and the trusts reposed in him without applying to court for leave so to do. I direct that in case any of my bequests or devises should be subject to any inheritance or other tax, the same to be paid by my estate. I hereby vest in my said Executor or Trus *49 tee such title as may be necessary to carry out the provisions of this my will.
“Cincinnati, June 27, ipio.
“her
“Mary Ann (X) Britt “mark
'“Signed and acknowledged as and for her. last will by the said Mary Ann Britt in our presence. and we have at her request and in her presence and in the presence of each other signed the same as attesting witnesses.
“Roy W. Kinsey, M.D.
“J. Stewart Hagen, M.D.
“John Ledyard Lincoln.”
As to the first proposition presented the court is of the opinion that the executor and trustee under said will had the power and authority to sell or lease said property and for that purpose to enter into an 'agreement for such sale or lease.
It is contended, however, that during the pendency of the contest of said will, and under and by virtue of Section 10633, General Code, the execution of the power of disposition! either by sale or lease, conferred on the executor and trustee by the will, was suspended until the validity of said- will was finally established. By its very terms Ithe agreement entered into between the plaintiff and the defendant, Stark, executor,’ etc., as set forth in plaintiff’s petition, was not to become operative or of any binding force and effect between the parties until the *50 validity of said will was established, and when so established the power and authority conferred by said will on the executor and trustee to sell or lease said property was to be exercised by him, and the trust imposed executed, but only, however, after the termination of the suspension of that power by. the declaration of the validity of said will.
Contracts for the sale of real estate contingent ■upon the happening of certain events are matters of every-day experience in real estate transactions, and the court is unable to see any reason in law for a distinction in that respect between an individual and an executor and trustee, both of whom being clothed with power and authority to sell or lease upon the happening of the event. This court is therefore of the opinion that the suspension of the execution of the power conferred by the will on the executor and trustee pending the contest of the will did not preclude him from entering into the agreement for the sale or. lease of said property contingent upon the validity of said will being established.
The institution of proceedings to contest the validity of a will naturally cast a doubt upon the validity of proceedings of an executor in the administration of the trust, for he would be unable to perform any act which would be binding upon the heirs at law or distributees at law contesting the will, in the event the will was set aside. The contrary would of course be true if the will were sustained, but no one dealing with the executor in the meantime could be sure whether or not he had authority as such, and the practical consequence would be that no one would deal with an executor *51 under such circumstances and there would be no administration o£ the estate as long as the contest continued. The legislature realizing the necessity for some remedial legislation on the subject enacted a law, Section 10633, General Code, enabling the executor to do certain things which are necessary and proper to be done in 'the administration of the estate, whether the will be sustained or defeated, which acts of the executor shall be binding upon all parties. The statute is therefore an enabling one and is not intended as a limitation or restriction of the powers of the executor.
There is no fraud or concealment alleged, nor is it alleged that any misrepresentations were made inducing plaintiff to enter into the agreement. On the contrary it is apparent from a reading of the agreement that the plaintiff knew of the pendency of the proceedings involving the validity of the will and the effect' it had upon the power of the executor and trustee to sell and convey the property, for in his offer to purchase the property — the agreer ment — he expressly stipulated:
“In the event that the courts decide that the will of Mary Ann Britt is valid, said sum of $5,000 shall be paid * * * to the executor and trustee.”
He further stipulated for the carrying out of the agreement.
Conditional contracts for the purchase and sale of real estate have been subjects of more or less litigation, and as a result we have a variety of opinions upon the subject, each depending upon its own peculiar facts. A case somewhat analogous *52 to the case at bar is In re Pearson’s Estate, 98 Cal., 603, on page 612 in which the court say:
“The purchaser from an executor at a sale under a power in. the will deals with him in making the purchase as he would with any° other vendor. He makes the purchase subject to a confirmation by the court, but in all other respects he may incorporate in his contract of purchase the same terms and condition's as he would in dealing with any other agent for the sale of property, and he can repudiate his contract for purchase only for the same reasons as he could in case he had bought from another.”
In the above case the performance of the contract, and thereby the execution of the power conferred by the will, was contingent upon an act to be performed by the court. In the case at bar the performance of the contract is contingent upon the ■Court’s declaring the will valid.
In the case Archdeacon, Admr., v. The Cincinnati Gas & Electric Co. et al., 76 Ohio St., 97, the question involved was as to the right of the administrator to maintain an action brought by him on March 28, 1903, as administrator of the estate of John Archdeacon, when as a matter of fact he was not the administrator and was not appointed as such until March 10, 1905, defendant contending that he was wholly without authority to a'ct at the time of instituting the suit. The court held, in the fourth proposition of the syllabus:
“The general rule that the due qualification of an administrator relates back to the time of his appointment as regards acts done by him in the interim which are for the benefit of the estate, ap *53 plies to a case of this character. The commencement of the suit by the administrator, therefore, being for the benefit of the estate, wa's the valid commencement of an action.”
So, in the case at bar, the removal of the impediment to the execution of the powers conferred by the will, by the -declaration of its validity, left the executor and trustee clothed with all power and authority conferred by the will as and from the date of his appointment, and he is therefore bound by his act of February 26, 1913, in entering into said agreement, provided, however, his act is not in excess of the power and authority conferred on ■him by said will.
In the case of Wilson v. Wilson, 54 Mo., 213, the court say:
“A will giving power of sale vests the title in the executor at the time of the testator’s death, and his deed of the property, made before probate of the will, is a good conveyance, provided the will be subsequently probated.”
The second proposition is: Had the’executor and trustee under the will of Mary Ann Britt, deceased, power and authority to sell or lease said property on the terms and conditions expressed in said agreement?
As we enter upon the consideration of this proposition we are confronted with the question: Does the agreement so entered into, when fully executed, constitute in- fact a sale or lease of the property? It is evident from a reading of the agreement that ■the plaintiff wanted to purchase the property, for he says in the opening paragraph of his offer: ■
*54 “I hereby, agree to purchase the property belonging to the Estate of Mary Ann Britt deceased.”
And after, describing the property he further says: “The consideration for said property is to be $125,000 to be paid as follows:”
The agreement further provides that in case of loss by fire the “loss, if any, payable to the said lessor on account of the purchase price of said property,” etc.
And again: “If the lessor elect to take the insurance on account of the purchase price the lease shall terminate, and the balance of the purchase price, if any, become payable.”
The defendant, Stark, in accepting the proposition says: “I hereby ac'cept the foregoing offer, upon the condition's therein named.”
True, the agreement provides that after the $50,000 is paid on the purchase price a lease duly executed by the executor and trustee shall be given ’ plaintiff for a term of twenty years at an annual ground rent of five per cent, upon the remainder of the purchase price, to-wit, $75,000, and containing a privilege to said lessee to -purchase said property at any time after ten years from the date, upon giving six months’ notice in writing to the lessor.
In construing this agreement it is necessary to take into consideration the circumstances surrounding the transaction, and the intention of the parties, as 'well a's the language used in expressing that intention. And in considering those matters the court has concluded that the agreement is an agreement for the purchase and sale of said property, and that while it is provided that a lease shall *55 be given with the privilege of purchase for the remainder of the purchase price of $125,000, viz., $75,000, it is intended by the parties as but another method for securing to the seller the balance of the purchase price, rather than through the usual form of a mortgage. The method so pursued is not an unusual one; on the contrary it is frequently resorted to in the bargain and sale of real estate. This conclusion we feel is strongly supported by. the fact that a very large part of the purchase price —forty per cent. — is to be paid in cash at or before the execution • and delivery of the lease.
It is contended, however, on the other hand, that, the executor and trustee had no power under the will to sell said property on any terms other than for cash, and that if the agreement is 'construed as one for the purchase and sale of the property it is not enforceable, for the reason that the terms of payment expressed in the agreement are contrary to and in excess of the power and authority to sell conferred by the 'will of Mary Ann Britt, deceased.
The will of Mary Ann Britt provided as follows:
“I give him full power .to sell, lease, divide or rent any of my real or personal property and execute proper instruments for that purpose * * * to malee and change investments and generally to do such things as may be necessary or proper in the administration of my estate and the trusts reposed in him without applying to court for leave so to do. * * * I hereby vest in my said executor or trustee such title as may be necessary to carry out the provisions of this my will.”
To enable said executor and trustee to sell and convey said real estate the testator clearly by her *56 will vested a fee simple title thereto in her executor and trustee and 'clothed him with full power and authority to do such things as may be necessary or proper in the administration of her estate and the trust reposed in him. She authorized him to sell or lease her real estate, and for that purpose to do such things as may be necessary or proper in administering the trust so reposed.
The executor and trustee was clearly authorized to sell the real estate described in the agreement,, and the testatrix having failed to specify the terms and conditions upon which such sale or sales should be made, on the contrary, having authorized him to do such things as may be necessary or proper in the administration of the trust, she thereby vested in him a discretionary power as to what would under the conditions and circumstances be proper and to the interest of her estate, in making such sales. The-testatrix clearly intended 'to rely upon the judgment of her executor and trustee in the management and sale or lease of her property, and for that purpose she made as complete a grant of power as it was possible for her to -do. In addition to her giving him power to sell and lease her property, she also gave him full power to make and change investments. Can it be contended that under such power he would not have the authority to invest in a ground-rent which in his judgment was a good investment? Having authority to so invest the funds of the estate could he not have sold-the property for cash and have subsequently purchased a ground-rent of this same property yielding five per cent, upon $75,000, that being only sixty per cent, of the supposed value of the *57 property ? If so, we can see no reason in law or in equity why he may not be permitted to do directly what he could properly and legally do indirectly. Clearly if the executor sold the property for cash ’he would have to reinvest the fund.
A trustee with unfettered power to sell undoubtedly has the right to make reasonable terms as to payment, consistent' with the best interests of the estate. Whatever is fairly and reasonably necessary to carry out the power.would be implied and included in it.-
2 Perry on Trusts, Section 786-a, states the following as the rule controlling sales by trustees:
“If, however, the sale is made for a change of investment, the trustee may take a mortgage upon the property sold', if it is real estate; for investment's in mortgages of real estate, in the absence of any provision in the instrument of trust to the contrary, are permitted by law.”
In McLenegan et al. v. Yeiser, 115 Wis., 304, the court say, in proposition six of the syllabus:
“Under a power to sell lands and invest the proceeds it is proper, in the absence of any provision to the contrary, to take- a mortgage on the property for a reasonable part of the price.”
In above case the sale was made to a life tenant and a mortgage was accepted for a large part of the price, running for. twenty-five years, at two per cent, and the court -held:
“That the sale would not be declared void because of the extent of the credit given at such low rate of interest, no prejudice having resulted to the remaindermen.”
*58 It was contended in above ease that the sale was invalid because of the credit given for the price, and that a sale on such credit was beyond the power conferred by the will, which, being silent as to terms, it is assumed must be construed to authorize a sale for present money. On page 313 of the opinion the court say:
“It seems plain that when the duty of a selling trustee is to keep proceeds of a sale invested, he can not do so more surely than by leaving* a reasonable amount thereof secured upon the property sold. Nothing can then happen to the estate more prejudicial than the return to it of the very property parted with, which is not injurious if enough of the price is collected, or otherwise secured, to cover expenses of sale and of reclamation.”
The foregoing case very aptly expresses the views of this court on the subject under consideration.
This will clearly and unequivocally gives to the executor and trustee the power to lease the property, without restrictions or limitations as to the terms and conditions of such lease. Counsel for plaintiff contend, however,' that the executor and trustee could not lease for a term extending beyond the term of the trust; which might be the case if the agreement were fully executed. By Item Fifth of her will she provided for.a final division of her property in the following language:
“All the rest and residue of my estate I give as follows: one-fourth thereof to my nephew Arthur J. Partridge, one-fourth to my niece Mrs. Mc-Ewen, one-fourth to my niece Mrs. Dixon and one-fourth to my niece Blanche Partridge. Said rest *59 and residue shall be divided ttpon the death of my brother Francis I. Partridge.”
Of course -we have no assurance that Francis I. Partridge will not survive the period of the lease, and the court can not therefore say that the lease will extend beyond the period of the trust. If it ■does not, then there is no authority in law which would justify the court in saying that said executor and trustee could not enter into a lease of said property for the period provided for in said agreement.
In the case of Greason v. Keteltas, 17 N. Y., 491, there was involved the validity of a lease made by a testamentary trustee for a term of twenty-one years, and the.’court say:- v
“A trustee holding a legal fee, determinable ■when the purposes of the trust shall cease, has power at law to lease for a term [of years] which may extend beyond the period of his trust estate, subject to the jurisdiction of a court in equity -to annul the lease if unreasonable or improvident.”
If Francis I. Partridge should not survive the period of the lease, and it became necessary for the executor and trustee to divide the estate, he clearly would have authority to sell and dispose of the fee of said property, the ground-rent, for the purpose of making said division, and woúld not thereby violate any of the provisions of said will.
The court is therefore of the opinion that the allegations contained in the answer of Edgar Stark, executor, constitute a defense to the cause of action set forth in the petition; that said executor and trustee has power and authority under the will to convey to plaintiff such title to said property as *60 was possessed by the testator; and that the allegations set forth in the cross-petition of said Edgar Stark, executor, constitute a good cause of action for the relief therein sought.
The demurrer will therefore be overruled.

Demurrer overruled.

Jones, P. J., and Hamilton; J., concur.