

Villanova University School of Law
Villanova University School of Law Digital Repository

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-8-2006

# Chen v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-3404

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Chen v. Atty Gen USA" (2006). *2006 Decisions*. Paper 469.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/469

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 05-3404
_____

XIAO LING CHEN,
Petitioner
vs.

ATTORNEY GENERAL OF THE UNITED STATES;
BUREAU OF CITIZENSHIP AND IMMIGRATION SERVICES,
Respondents

_____

ON REVIEW OF A PETITION FOR REVIEW OF AN ORDER
OF THE UNITED STATES DEPARTMENT OF JUSTICE
BOARD OF IMMIGRATION APPEALS
(BIA No. A # 78-208-653)
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
July 14, 2006
Before:   SMITH, WEIS and ROTH Circuit Judges
Filed September 8, 2006
_____

OPINION
_____

WEIS, Circuit Judge.

        This appeal is from the June 17, 2005 Order of the Board of Immigration

Appeals ("BIA") that affirmed the decision of an Immigration Judge ("IJ") denying the

petitioner's requests for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). Petitioner arrived in the United States in January 1999 and applied for asylum in January 2000. On April 6, 2000, the government filed a Notice to Appear alleging that petitioner was removable pursuant to section 212(a)(6)(A)(i) of the Immigration and Naturalization Act. 8 U.S.C. section 1182(a)(6)(A)(i).

Petitioner is a native and citizen of the People's Republic of China. She alleges that in 1992 she was forced to undergo an abortion while living in China and that she would be forcibly sterilized if she is returned to that country with her two American-born children.

At a hearing on March 27, 2001, an IJ in New York noted that it appeared that petitioner had entered the United States less than one year before she filed her application for asylum. On September 25, 2001, after the petitioner testified about her entry and after hearing corroborating testimony from a friend of the petitioner's husband, the New York IJ stated on the record: "All right. I'm going to make a finding that [petitioner] filed [for asylum] within one year [of her entry]."

The case was then transferred to Philadelphia. On November 21, 2002, petitioner appeared before IJ Ferlise. He overturned the New York IJ's finding that the petitioner's asylum claim had been filed within a year of her entry in this country. IJ Ferlise stated that the New York IJ's determination "doesn't impact on my . . . finding." He thought it was "irresponsible" of the New York IJ to try to "dissect" the case and to

2

"[t]ell me what direction to head. I don't appreciate that."

At the end of a hearing on March 12, 2004, IJ Ferlise issued an oral decision in which he concluded that, although "a prior Immigration Judge found that . . . [petitioner] had proven that she entered the United States in January 1999 ... [t]he Court is not bound by that decision." IJ Ferlise also concluded that petitioner lacked credibility and denied the petitioner's requests for relief.

On June 17, 2005, the BIA affirmed IJ Ferlise's decision, ruling that petitioner failed to establish by clear and convincing evidence that her application for asylum was timely filed and that, even if the application was timely, petitioner had not presented credible claims in support of her requests for relief. Moreover, the BIA agreed with the IJ that the inconsistencies he had found provided a reasonable basis for rejection of the petitioner's testimony and that the petitioner's application for asylum was frivolous.

We do not reach the merits of the petitioner's claims, but will grant the petition for review because of unsubstantiated rulings by the IJ.

I.

This Court has jurisdiction to review a final order of removal. 8 U.S.C. § 1252(b)(2) & (d). When "the BIA directs us to the opinion and decision of the IJ who originally assessed [the] application, we review the IJ's opinion." Shah v. Attorney General, 446 F.3d 429 (3d Cir. 2006) (quoting Dia v. Ashcroft, 353 F.3d 228, 240 (3d

3

Cir. 2003) (en banc) (internal quotations omitted)).   Where an IJ's

> "conclusion is not based on a specific, cogent reason, but,
> instead, is based on speculation, conjecture, or an otherwise
> unsupported personal opinion, we will not uphold it because it
> will not have been supported by such relevant evidence as a
> reasonable mind would find adequate. In other words, it will
> not have been supported by substantial evidence."

Id. (citing Dia, 353 F.3d at 250).

## II.

INA section 208 prohibits review of the Attorney General's decision that an alien failed to demonstrate by clear and convincing evidence that the application for asylum had been filed within one year following the date of entry.   8 U.S.C. § 1158(a)(2)-(3); see also Tarrawally v. Ashcroft, 338 F.3d 180, 185 (3d Cir. 2003). However, because we conclude that it was improper for IJ Ferlise to disregard the prior determination of the New York IJ that the petitioner's application was timely, we will review the effect of that ruling.

The Court of Appeals for the Seventh Circuit has concluded that the law of the case doctrine applies in the immigration context and bars an IJ from ignoring the prior decision of another IJ in the same case, absent extraordinary circumstances. Zhang v. Gonzalez, 434 F.3d 993 (7th Cir. 2006); Ko v. Gonzalez, 421 F.3d 453 (7th Cir. 2005); but see Biltmore Forest Broadcasting FM, Inc. v. F.C.C., 321 F.3d 155, 163 (D.C. Cir. 2003)(noting, in a non-immigration case, that "the law of the case doctrine is of uncertain

4

force in the context of administrative litigation"); Lockert v. U.S. Dept. of Labor, 867 F.2d 513, 518 (9th Cir. 1989)(expressing doubt, in a non-immigration case, that the law of the case doctrine should apply to administrative proceedings).

In Ko, the Court of Appeals for the Seventh Circuit concluded that it was an abuse of discretion for an IJ considering a reopened case to reverse the prior decision to reopen. Id. at 456. The Court of Appeals observed that "[a]lthough [the first IJ] should have explained his reasons for granting [the petitioner]'s motion to reopen, his decision was not so baseless as to warrant a precipitous and unsupported reversal." Id. The Court of Appeals further observed, "'[l]itigants have a right to expect that a change in judges will not mean going back to square one.'" Id. (quoting Williams v. Commissioner, 1 F.3d 502, 503 (7th Cir.1993)).

The Seventh Circuit reiterated the applicability of the law of the case doctrine to immigration cases in Zhang. In that case, the Court of Appeals relied on Operating Policies & Procedures Memorandum 01-02 of the Office of the Chief Immigration Judge, United States Department of Justice Executive Office of Immigration Review which states that "the law of the case doctrine is consistent with all existing immigration laws and regulations," and that it "shall apply" where there has been a change in venue.

Although they are persuasive, we need not adopt the holdings of the Seventh Circuit in this not precedential opinion. We perceive no "exceptional

5

circumstances" that would justify failure to abide by the law of the case doctrine here. The New York IJ made his ruling after an evidentiary hearing and IJ Ferlise did not cite any intervening circumstances that would justify reversing a ruling of another IJ of equal rank. Accordingly, we conclude that the petitioner did apply for asylum within the prescribed period of one year.

III.

IJ Ferlise stated that even if the application for asylum was timely, he would still have found that petitioner had not proved that she had a well-founded fear of persecution, "based on her total lack of credibility in her testimony."

In reaching his finding of a lack of credibility, the IJ relied on specific instances of alleged inconsistency. After reviewing the record, we conclude that the IJ's view either contradicts the record or addresses issues irrelevant to the merits of petitioner's claim.

The alleged inconsistencies upon which the IJ rested his adverse credibility determination are as follows:

**1. Surrendering or resisting the cadres.**

The IJ noted that petitioner "specifically stated to the Court that she voluntarily surrendered to the cadres to gain the freedom of her mother-in-law, who was in custody" though at another point she said she was "taken away involuntarily and was

6

resisting the cadres." The IJ misconstrued the petitioner's testimony. The record reveals that petitioner testified that she voluntarily went to the health center to have the abortion so that the government would release her mother-in-law. App. 137. However, petitioner testified that she resisted once she was in the room where the abortion was performed. App. 174. The asserted "inconsistency" simply does not exist.

### 2. Petitioner's reason for coming to the United States.

Petitioner told the asylum officer that she had come to the United States to be with her husband. App. 46. The IJ observed that "[i]f indeed the respondent had come to the United States to avoid persecution, in the considered opinion of this Court, that would have been her immediate response to the asylum officer."

Petitioner's husband had been in the United States before petitioner arrived in this country. On its face, her response to the asylum officer was perfectly understandable and could have been expected. The IJ's feeling that her response was unreasonable is contrary to the motivations of ordinary people. Her answer does not support a finding of falsehood.

### 3. The petitioner's statement that she had not been persecuted. App. 46.

The IJ noted that Chen first told the asylum officer that she had not been persecuted and it was only after the translator "interjected him or herself into this

interview . . . that the respondent answered that she was persecuted." App. 46. This seems to be a clear case of misconstruing the record.

The asylum officer's notes suggest that, although petitioner initially stated that she had not been persecuted, her translator immediately clarified for the asylum officer that the question was unclear to petitioner and needed to be rephrased. The asylum officer did so and petitioner clarified that she was persecuted in China.

It is not as though petitioner had said that there had been no persecution and sometime later asserted the opposite. Petitioner explained the confusion to the IJ. She testified that she initially thought that the asylum officer was asking about whether she had been persecuted in 1999, but revised her answer as soon as she understood the question to be about her experience in China. The IJ concluded that the petitioner's explanation "makes absolutely no sense to the Court, since the respondent was in the United States, according to her testimony, since January of 1999." App. 46. To the contrary, the petitioner's explanation was clear and the IJ's comment leaves us at a loss.

### 4. Date of abortion and date of mother-in-law's arrest.

The IJ noted that petitioner testified that the abortion occurred in 1992, but the asylum officer's notes say that she said it occurred in 1993. Further, the IJ noted that her medical history report, taken at the time of her admission to New York University hospital in December 1999, originally stated that she had an abortion in 1995 and that this abortion occurred at eight weeks, not four months. The correction in the hospital record

8

was made fifteen months after the initial notation on the chart and six days before the chart was presented in court. App. 50. Moreover, the alleged contradictions were in the handwritten notes of third parties as compared to the petitioner's testimony on the record.

Petitioner did not present contradictory testimony before the IJ with respect to the date of the abortion. The IJ erroneously stated that petitioner first testified that she was arrested and taken for a forced abortion on December 1, 1992 and then changed her story to state that it was on December 8, 1992. App. 49. The record, however, shows that this alleged "inconsistency" is erroneous. Petitioner never stated that the abortion occurred on December 1 and only referred to December 8. App. 134-36.

In addition, even if petitioner had contradicted herself as to the date of her abortion during her testimony before the IJ, the date is not material to her asylum claim. Rather the material fact is whether she had a forced abortion during her life in China - a fact that was uncontradicted. See Cham v. Attorney General, 445 F.3d 683, 691-92 (3d Cir. 2006) ("discrepancies" of a few months or a year with respect to relevant events were immaterial); Fiadjoe v. Attorney General, 411 F.3d 135, 156 (3d Cir. 2005) ("[t]he inability [of the petitioner] to recall during the stress of the hearing that the year of return [to the house of her father who abused her] was 1989 does not affect credibility.").

In addition to the alleged inconsistency as to the date of her forced abortion, IJ Ferlise concluded that petitioner testified that the government came to arrest her mother-in-law on October 1, 1992 and then said that this occurred on December 1, 1992.

9

App. 48.  This "alleged inconsistency" is another instance of a clearly harmless, immediately corrected, misstatement.  In her first response to the question, petitioner stated that the arrest occurred on December 1, 1992.  App. 136.  Later, she stated that it occurred October 1, 1992, but immediately corrected herself.  App. 172.  This second discussion of the date of the arrest immediately followed a discussion of whether petitioner looked pregnant when she was married on October 1, 1992.  She, in fact, stated, "December. It's not October.  You confused me." App. 172.

### 5.  Name of her husband's cousin.

The IJ emphasized that petitioner did not know the name of the cousin with whom her husband stayed in Shanghai while he was in hiding in 1992.  This is entirely irrelevant to her claim that she had a forced abortion.  Moreover, there is no indication that petitioner knew all of her husband's cousins.

### 6.  Chinese government's knowledge that petitioner was pregnant.

The IJ questioned how the Chinese government could have known that petitioner was pregnant if, as she testified, she was not showing when she was arrested and forced to have an abortion.  App. 170-71.  The IJ ignored the petitioner's plausible suggestion that her doctor might have informed the government.  App. 170-72.

The alleged "inconsistencies" in the petitioner's testimony, many of which are the product of misconstruction and exaggeration by the IJ do not provide substantial evidence to support his adverse credibility finding.

10

**7. Date of departure from home village.**

The IJ also noted that Chen initially testified that she left her home village on January 15, 1992, but subsequently stated that she left her village on January 15, 1999. Chen did testify that she left her village in 1992, but immediately corrected herself to state that she left in 1999. App. 181-82.

**8. Chen's arrival in the United States.**

Finally, the IJ focused on a few alleged inconsistencies regarding Chen's arrival in the United States. First, Chen testified before the IJ that she arrived in the United States in Newark, New Jersey and had her passport stamped there. The Asylum Officer, however, recorded that she stopped first in Seattle before arriving in Newark. Judge Ferlise took judicial notice that all passengers on flights into the United States are inspected at first port of entry. Second, According to the Asylum Officer's notes, Chen said that she took a three hour flight from Seattle to Newark. Judge Ferlise took judicial notice that that flight is six hours. Third, according to the Asylum Officer's notes, Chen said she was carrying a passport with the name Jian Xian Ling, born 12-19-1974. At the merits hearing, which occurred over four years after the asylum interview and five years after she entered the United States, she did not recall the name on the passport, or telling the Asylum Officer the name that was on her fake passport.

It is unclear how any alleged credibility issues emphasized by the IJ reflect on whether petitioner is actually afraid of being persecuted if she returns to China because

11

she has two children, or on whether, as a result of that undisputed fact, this fear is well-founded, and, finally, whether it is more likely than not she would be sterilized if she returned to China. Indeed, the IJ failed to consider whether the Chinese government had a policy of sterilizing women with two children.

IV.

We will remand for a reconsideration before another IJ. The IJ impermissibly ignored the ruling of the New York IJ as to the timeliness of the petitioner's application for asylum and relied on inconsistencies that were either not so or only tangentially related to the petitioner's case in chief.